Finis W. SMITH, John W. Young, ex rel. STATE of Oklahoma, Petitioners,

v.

STATE BOARD OF EQUALIZATION et al., Respondents.

No. 56413.

Supreme Court of Oklahoma.

May 15, 1981.

Rehearing Denied July 28, 1981.

Finis W. Smith, and John W. Young pro se, for petitioners.

Yvonne Sparger Nichols, Edmond, for respondents.

Jan Eric Cartwright, Atty. Gen. by John F. Percival, Asst. Atty. Gen., Oklahoma City, amicus curiae.

HODGES, Justice.

The question presented by this application to assume original jurisdiction and petition for writ of mandamus is whether the State Board of Equalization [Board] is required, pursuant to the Okl.Const. Art. 10, § 23,[1] to certify the total amount of revenue which accrued to the General Revenue Fund and each special fund during the last preceding fiscal year.

The Board by a majority vote[2] refused to certify each special fund for fiscal year 1982. Two members of the Oklahoma State Senate, Finis W. Smith and John W. Young, petitioners, seek to compel them to do so.

It is undisputed by the parties that this is a matter of publici juris and that this Court

---

1. It is provided by the Okl.Const. Art. 10, § 23 in pertinent part:

"Not more than forty-five (45) days or less than thirty-five (35) days prior to the convening of each regular session of the Legislature, the State Board of Equalization shall make an itemized estimate of the revenues to be received by the state under the laws in effect at the time such estimate is made, for the next ensuing fiscal year, showing separately the revenues to accrue to the credit of the General Revenue Fund and each special fund of the state. The estimate shall not exceed an amount which shall be determined by the following procedure:

(1) Certify the total amount of revenue which accrued to the General Revenue Fund and each special fund during the last preceding fiscal year; . . ."

2. The Board of Equalization is constitutionally comprised, pursuant to the Okl.Const. Art. 10, § 21, of the Governor, State Superintendent of Public Instruction, President of the Board of Agriculture, State Auditor, State Treasurer, Lieutenant Governor, and Attorney General.

has jurisdiction.[3] What is disputed is the necessity for the Board to certify and estimate earmarked or dedicated funds which the Legislature has appropriated on a continuing basis. The respondents contend that since 1941, when Art. 10, § 23 was adopted, the Board has certified only those funds appropriated by the Legislature on an annual basis. The Board's decision not to certify all special funds purportedly was based on its determination that the Legislature had better facilities to determine the possible receipts of continuing appropriations. The respondents also argue that: 696 funds are appropriated on a continuing basis; the task of estimating these funds is too burdensome; and certification of funds under Art. 10, § 23, which are earmarked, would provide information of no value because these funds are already appropriated. The respondents also assert that because Art. 10, § 23(5)[4] provides that in the event the Board fails to file an estimate, the Legislature shall do so, it is not a mandatory duty of the Board.

The petitioners and the amicus curiae allege that Art. 10, § 23 requires that the Board "shall" estimate revenues accruing to the General Revenue Fund and each special fund; and that both classifications are subject to the constitutional limitations to prevent non-appropriated expenditures and to prevent deficit spending. The assertion is also made that the estimation of all revenues is not an impossible task nor is it unduly complicated or burdensome. We agree.

▉▉▉ The constitutional requirement that the Board shall certify the total amount of revenue which accrued to the General Revenue Fund and each special fund during the last preceding fiscal year is clear, mandatory, and unambiguous. "Shall" is commonly understood to be a word of command which must be given a compulsory meaning.[5] "Accruing" connotes periodic accumulation, growth increase, or augmentation.[6] Appropriation, as contrasted to accruing, is the designation or authorization of the expenditure of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand.[7]

The crux of this question is what is a special fund within the contemplation of Art. 10, § 23? This Court in *Draper v. State Bd. of Equalization*, 414 P.2d 276, 279 (Okl.1966) defined special funds as including only those funds which are supported by direct taxes, fees, or other revenue.[8] In

---

3. *State v. State Board of Equalization*, 552 P.2d 1134, 1137 (Okl.1975).

4. The Okl.Const. Art. 10, § 23(5) provides in pertinent part:

   ". . . Such estimate shall be filed with the Governor, The President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives. The Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such estimate is made and filed, unless the State Board of Equalization has failed to file said estimate at the time of convening of said Legislature, then in such event, it shall be the duty of the Legislature to make such estimate pursuant to the provisions of this amendment, and all appropriations made in excess of such estimate shall be null and void; . . ."

5. *Oklahoma Alcoholic Beverage Control Bd. v. Moss*, 509 P.2d 666, 668 (Okl.1973).

6. *Globe Indemnity Co. v. Bruce*, 81 F.2d 143, 153 (10th Cir. 1935) *cert. den'd.* 297 U.S. 716, 56 S.Ct. 591, 80 L.Ed. 1001 (1936).

7. *Edwards v. Childers*, 102 Okl. 158, 228 P. 472, 473 (1924); *Menefee v. Askew*, 25 Okl. 623, 107 P. 159, 161 (1910).

8. This Court in *Draper v. State Bd. of Equalization*, 414 P.2d 276, 279 (Okl.1966) said:

   "Our attention is invited to the Emergency Appropriation Fund which was created by the Legislature in 1947. 62 O.S.1961, Sec. 9.1–9.8. It is argued that the Emergency Appropriation Fund may be treated as a 'special fund' under Section 23, Constitution, supra. This argument is untenable. Special funds, in the contemplation of Section 23, include only those funds that are supported by direct taxes, fees or other revenue. The Emergency Appropriation Fund consists of 'all moneys transferred, or authorized to be transferred by the Legislature from any surplus cash arising incidentally from receipts in excess of appropriations to the credit of other funds in the State Treasury.' 62 O.S. 1961, Sec. 9.2. In other words, accruals in the Emergency Appropriation Fund are not revenue, but such fund is simply a convenient account in which to transfer surplus funds from the General and Special Funds not needed to pay current year appropriations. . . ."

order to qualify as a special fund the account must directly receive revenue in the form of taxes, fees, charges, costs, grants, or other revenue.

We are not persuaded by the argument that continuing funds are not subject to certification. The court adopted the premise in *State ex rel. Hawkins v. Oklahoma Tax Commission,* 462 P.2d 536 (Okl. 1969) that the earmarked *continuing* special gasoline excise tax was subject to the provisions of Art. 10, § 23.

■ For example, the Technical and Scientific Education Special Fund, a separate and continuing fund, created for the general purpose of technical and scientific education in vocational, technical and scientific schools or junior colleges receives 92% of the documentary stamp tax.[9] It is a special fund with the *Draper* definition of a fund which directly receives moneys in the form of fees, charges, costs, grants, or other revenue, and it must be certified by the Board for appropriation by the Legislature. The Court is unable to determine precisely how many special funds require estimation by the Board from the record. However, we hold that all funds which receive funds from taxes, charges, costs, grants, or other revenue are within the purview of Art. 10, § 23.

■ Article 10, § 23 was adopted by the people in 1941 to provide for budget balancing in this state. There is no room for construction or provision for further inquiry when the Constitution plainly speaks. A constitutional amendment should be construed in consideration of its purpose and be given a practical interpretation to carry out the plainly manifested purpose of the people who adopted it.[10] The fiscal responsibility shown by Oklahoma has become an enviable example for the nation. This policy of fiscal restraint and control can only be applauded in a time of monetary crises. We do not find this constitutional requirement

to be unduly burdensome nor to be a vain endeavor. The citizens of this state, as well as the Legislature, have a vested constitutional right to know how much money is available for appropriations to the General Revenue Fund and special funds which are supported by direct taxes, fees, or other revenue.

Because of the long standing administrative interpretation by the Board of Art. 10, § 23, we find that it would not be wise to disrupt governmental functions in process during fiscal year 1981.[11] We, therefore, order that when the Board next meets to estimate and certify the total amount of revenue which accrued to the General Revenue Fund and each special fund during the last preceding fiscal year, it *shall* certify each special fund which directly receives funds in the form of taxes, fees, charges, grants, or other revenue.

ORIGINAL JURISDICTION ASSUMED. WRIT OF MANDAMUS GRANTED.

BARNES, V. C. J., and LAVENDER, HARGRAVE and OPALA, JJ., concur.

WILLIAMS, SIMMS, and DOOLIN, JJ., concur in part, dissent in part.

IRWIN, C. J., dissents.

IRWIN, Chief Justice, dissenting:

In my opinion, Art. 10, § 23, Okl.Const., does not require the State Board of Equalization (Board) to make an itemized estimate and certify the revenues accruing to a "special fund" where such revenues have been earmarked and dedicated for a specific purpose by a continuing appropriation. I am of the view that the Board is required to estimate and certify only those revenues that must be appropriated by the succeeding Legislature and it is not required to estimate and certify those funds that are earmarked and dedicated and requires no legislative action before they can be encumbered.

The majority states:

---

9. See 68 O.S.Supp.1978 §§ 5101, 5104.

10. *Austin, Nichols & Co., Inc. v. Okl. County Bd. of Tax-Roll Corrections,* 578 P.2d 1200 (Okl.1978).

11. *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601, 608 (1965); *Great Northern Ry. Co. v. Sunburst Oil & Rfg. Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

"We are not persuaded by the argument that continuing funds are not subject to certification. The Court adopted the premise in *State ex rel. Hawkins v. Oklahoma Tax Commission*, 462 P.2d 536 (Okl.1969) that the earmarked *continuing* special gasoline excise tax was subject to the provisions of art. 10, § 23."

I agree that *Hawkins* holds that the gasoline excise tax was subject to Art. 10, § 23 [1], but in my opinion, *Hawkins* will not support the conclusion that Art. 10, § 23, requires the Board to estimate and certify funds that are earmarked and can be encumbered without any legislative action.

Although Art. 10, § 23, has been amended since our 1969 decision in *Hawkins*, such amendments are not material to the issues presented here.

In *Hawkins*, we discussed in detail Art. 10, § 23, which is known as the "1941 Budget Balancing Amendment" and the 1941 Legislative enactment vitalizing the 1941 amendment. (62 O.S. 1941, § 8.1–8.18). In my opinion, *Hawkins*, in so far as pertinent here, supports the following:

(1) The Legislature can constitutionally earmark or make a continuing appropriation to a special fund the revenues arising from a special tax and allocate or dedicate such revenues to a special purpose.

(2) If the Legislature does not provide that the unencumbered balance at the end of the fiscal year in such special fund shall be transferred, it is a "non-fiscal year fund" and the balance at the end of the fiscal year will remain in the same fund for the subsequent fiscal year and can be expended at any time without any legislative action.

(3) There are no constitutional limitations [2] upon the expenditure of such funds, but the state may not incur an indebtedness in excess of the unencumbered balance of surplus cash on hand in contravention of Art. 10, § 23.

If the Board is required to estimate and certify earmarked funds it would appear that there would be a conflict between two very important provisions in § 23. One proviso prescribes that all appropriations made in excess of the Board's estimate shall be null and void. Another proviso prescribes that a department operating on revenues derived from any law or laws which allocate the revenues to such department shall not incur obligations in excess of the unencumbered balance of cash on hand. If the Board's estimate is less than the cash actually accruing to an earmarked special fund, one of the above provisions would have to give way to the other. I say that both should be operative under any and all circumstances because in my opinion the "estimate and certification" requirements of § 23 are not applicable to funds that are earmarked and dedicated by a continuing appropriation where no legislative action is necessary to encumber the balance of cash on hand.

Petitioners state that prior to 1947 the Board meticulously estimated all funds, including earmarked funds, and it was not until 1947 that the Board simply stopped estimating the earmarked funds. The 1941 budget balancing amendment has been amended twice, in 1968 and in 1975, since its adoption. If there had been any intent to change the funds which the Board was required to estimate, surely the Joint Resolution proposing the two amendments, and the amendments, would have contained some language indicating a change. I am unable to find any intent to require the Board to estimate funds that have been earmarked and already appropriated and in my opinion, § 23 may not be construed to require such estimation. The estimation required by § 23 is directed only to those

---

1. It is subject to the proviso of Art. 10, § 23 that provides: "Any department ... operating on revenues derived from any law or laws which allocate the revenues thereof to such department ... shall not incur obligations in excess of the unencumbered balance of cash on hand."

2. Art. 5, § 55, Okl.Const. provides: "No money shall ever be paid out of the treasury of this State ... except in pursuance to an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act ..."

funds which are appropriated annually and not to earmarked funds that have been appropriated.

I respectfully dissent.

DOOLIN, Justice, dissenting in part:

I dissent in part to the prospective application in the majority opinion of the *Sunburst Doctrine*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

The duty to certify by the Board of Equalization is applicable, yesterday, today and tomorrow; for so long as the Constitution remains unchanged.

I am authorized to state that WILLIAMS and SIMMS, JJ., support this dissenting position.