Dear Secretary of Finance and Revenue, White
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Does paragraph 2 of Article X, Section 23 of the OklahomaConstitution require the State Board of Equalization to recertifyrevenues in the event that H.B. 1017 is repealed?
 2. Does paragraph 2 or paragraph 6 of Article X, Section 23 ofthe Oklahoma Constitution govern the manner in which theshortfall is treated? More specifically, would unallocatedappropriations be reduced in reverse order of the sequence ofsigning of appropriation bills, or would the appropriationallotments be reduced pro rata within funds?
 3. Do revenues received and accounted for pursuant to 62O.S. 41.29a (1990) constitute a separate fund for purposes ofabsorbing a revenue failure resulting from a repeal of H.B.1017?
 4. Is the General Revenue Cash-flow Reserve Fund createdpursuant to 62 O.S. 10.1 (1990) considered "revenues actuallycollected" for the purposes of paragraph 6 of Article X, Section23 of the Oklahoma Constitution?
¶ 1 Your questions concern Initiative Petition No. 34i (State Question No. 639*) which will, if adopted by the people, repeal House Bill 1017, 1990 Okla. Sess. Laws, c. 2 (1989 First Extraordinary Session) (hereafter "H.B. 1017"). More specifically, your questions center upon the effect which the repeal of H.B. 1017 would have upon the fiscal management of the State.
 I.
¶ 2 Your first question concerns whether the State Board of Equalization has a duty to recertify revenues in the event H.B. 1017 is repealed. Article X, Section 23 of the Oklahoma Constitution requires the State to maintain a balanced budget, and outlines the procedures to be followed in order to ensure compliance with this requirement. One such procedure is the State Board of Equalization's annual certification of the amount available for appropriation.[1] Article X, Section 23(1) provides a detailed formula to be followed by the Board in determining this amount. The certification is to be filed not more than 45 days nor less than 35 days prior to the convening of each regular session of the Legislature. The power of the Legislature to appropriate money is directly tied to this certification:
 The Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such certification is made and filed, unless the State Board of Equalization has failed to file said certification at the time of convening of said Legislature. In such event, it shall be the duty of the Legislature to make such certification pursuant to the provisions of this section.
Okla. Const. Article X, Section 23(2).
¶ 3 All appropriations made in excess of the State Board of Equalization's certification are "null and void." Okla. Const. Article X, Section 23(2). Appropriations bills become law upon the signature of the Governor. Okla. Const. Article VI, Section11. Therefore, all such bills would be presumptively valid until the total amount of funds appropriated reached the total amount certified by the Board. Because excess appropriations are of no effect, the appropriations appearing in bills would need to be disregarded in reverse order of the sequence in which they were signed until the excess is eliminated. This procedure would be implemented by the Office of State Finance as that is the agency which implements the spending authorized through the appropriations and allotment process. See e.g., 62 O.S. 41.6,62 O.S. 41.7 and 62 O.S. 41.9 (1981).
¶ 4 In the event the Legislature enacts laws which provide for either a decrease or increase in revenues, the State Board of Equalization has a duty to certify the revenues which will accrue under such laws:
 All appropriations made in excess of such certification shall be null and void; provided, however, that the Legislature may at any regular session or special session, called for that purpose, enact laws to provide for additional revenues or a reduction in revenues. . . . Whereupon, it shall be the duty of the State Board of Equalization to make a determination of the revenues that will accrue under such laws and ninety-five percent (95%) of the amount of any increase or decrease resulting, for any reason, from such changes in laws shall be added to or deducted from the amount previously certified available for appropriation from each respective fund. . . . and such adjusted amount shall be the maximum amount which can be appropriated for all purposes from any such fund for the fiscal year being certified.
Okla. Const. Article X, Section 23(2) (Emphasis added).
¶ 5 The State Board of Equalization has a duty to make a new determination of revenue when laws increasing or decreasing revenues are enacted by "the Legislature . . . at any regular session or special session, called for that purpose." Okla. Const. Article X, Section 23(2). The Constitution is silent with regard to an increase or decrease in revenues resulting from laws enacted by the people through the initiative process.
¶ 6 The Constitution must be interpreted so as to give effect to the intent of the framers and of the people adopting it.Draper v. State, 621 P.2d 1142, 1145 (Okla. 1980). Article X, Section 23 was adopted by the people to provide for balanced budgeting in the State of Oklahoma. Smith v. State Board ofEqualization, 630 P.2d 1264, 1267 (Okla. 1981). In Smith, the Oklahoma Supreme Court noted the following with regard to its purpose:
 The fiscal responsibility shown by Oklahoma has become an enviable example for the nation. This policy of fiscal restraint and control can only be applauded in a time of monetary crisis. We do not find this constitutional requirement to be unduly burdensome nor to be a vain endeavor. The citizens of this state, as well as the Legislature, have a vested constitutional right to know how much money is available for appropriations to the General Revenue Fund and special funds which are to be supported by direct taxes, fees, or other revenue.
630 P.2d at 1267.
¶ 7 The text of Article X, Section 23(2) specifically references laws enacted by "the Legislature." However, the power of the people to enact laws through the initiative process derives from the Constitution itself. Okla. Const. Article V, Section 1, Article V, Section 2 and Article V, Section 7. Thus, "both the people and the Legislature may propose legislation independently, and neither can block the effort of the other during the process." Oklahoma Tax Commission v. Smith,610 P.2d 794, 807 (Okla. 1980).
¶ 8 Notwithstanding the failure of Article X, Section 23(2) to specifically provide for recertification in the event laws affecting revenue are enacted by the people, the intent of the budget balancing provision must be considered. "A constitutional amendment should be given a practical interpretation to carry out the plainly manifested purpose of the people who adopted it."630 P.2d at 1267. It seems clear that the primary purpose of Article X, Section 23(2) is to inform the Legislature of how much money is available for appropriation prior to authorization of its expenditure, and to limit the authority of the Legislature with respect to the amount of appropriations it may make.
¶ 9 Thus, the most reasonable interpretation is that if H.B. 1017 is repealed by a vote of the people, the State Board of Equalization must recertify revenues before the Legislature may pass or enact any further bills, acts or measures making an appropriation of money from the affected funds, for the fiscal year(s) certified.
 II.
¶ 10 Your second question concerns how the Office of State Finance will deal with the revenue shortfall which is anticipated as a result of the repeal of H.B. 1017.
¶ 11 A balanced budget is not all that is required by Okla. Const. Article X, Section 23. Subsection 6 of Article X, Section 23 requires the Legislature to provide a method
 whereby appropriations shall be divided and set up on a monthly, quarterly or semiannual basis within each fiscal year to prevent obligations being incurred in excess of the revenue to be collected, and notwithstanding other provisions of this Constitution, the Legislature shall provide that all appropriations shall be reduced to bring them within revenues actually collected, but all such reductions shall apply to each department, institution, board, commission, or special appropriation made by the State Legislature in the ratio that its total appropriation for that fiscal year bears to the total of all appropriations from that fund for that fiscal year[.]
¶ 12 The Legislature has complied with this mandate by enacting62 O.S. 41.9 (1981). This section allows appropriations to be allotted for spending only upon written request of the spending agency and approval by the Budget Director. The Budget Director can require the spending agency to revise allotment requests before approval if such is necessary to ensure sufficient balances in the appropriation to finance the agency's operation for the remainder of the year. Id. This section also addresses the occurrence of a revenue failure:
 In the event of a failure of revenue, the Budget Director shall control the allotment authorizations to prevent obligations being incurred in excess of the revenue to be collected. However, the Budget Director shall make all reductions within each state fund where a revenue failure occurs apply to each department, institution, board, commission or special appropriation made by the State Legislature, in the ratio that its total appropriation for that fiscal year bears to the total of all appropriations for that fiscal year, as provided in Article X, Section 23, of the Constitution of Oklahoma.
62 O.S. 41.9 (1981) (Emphasis added).
¶ 13 "Failure of revenue" is nowhere defined in the Constitution or laws of the State of Oklahoma. However, words used in a statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. 25 O.S. 1 (1981). "Failure" is defined by the Webster's Third New International Dictionary (1981) as "the fact of a certain action or process not having occurred" and "not matching hopes or expectations." Thus, the Budget Director's duty to reduce allotments arises whenever the receipt of revenues do not occur as expected, regardless of the reasons therefore. The answer to your second question, then, is that the Budget Director must make pro rata reductions of appropriation allotments in the event of a revenue failure created by the repeal of H.B. 1017.
¶ 14 In your question, you mention the possibility of dealing with a shortfall by unallocating appropriations in the reverse order in which the bills which authorized them were signed. As discussed above, this methodology is authorized when the Legislature passes appropriations which exceed the State Board's revenue certification because all appropriations made in excess of the State Board of Equalization's certification are null and void. Okla. Const. Article X, Section 23(2). However, appropriations which are consistent with the amount then currently certified by the Board as available for appropriation are valid. This point was touched upon by the Oklahoma Supreme Court in its opinion regarding the validity of the initiative petition to bring H.B. 1017 to a vote of the people:
 [T]he repeal of House Bill 1017 would be effective only upon its approval by the voters. Article V, Section 3, Oklahoma Constitution. The debts incurred under the bill and the revenue raised by it would have been validly incurred and collected and expended during the time the bill was law.
In re Initiative Petition No. 347, 62 O.B.A.J 1880, 1882 (June 15, 1991).
¶ 15 Therefore, even if H.B. 1017 is repealed and revenues recertified, Article X, Section 23 does not authorize the unallocation of previous appropriations in reverse order of their enactment.
 III.
¶ 16 Your third question is whether the monies received as a result of revenue increases contained in H.B. 1017 constitute a separate fund for the purposes of absorbing the revenue failure which will result from its repeal.
¶ 17 Title 62 O.S. 41.29a (1990), which was originally enacted as a part of H.B. 1017, provides for the separate accounting and certification of increases in the General Revenue Fund which result from the tax changes contained in H.B. 1017. More particularly, the statute requires Of fice of State Finance, among other things, to:
 (1) separately present to the State Board of Equalization, as a part of the Board's official certification process, the estimate of all revenue which will accrue to the General Revenue Fund as a result of tax changes contained in H.B. 1017;
 (2) separately account for and report monthly on revenues accruing to the General Revenue Fund as a result of H.B. 1017; and
 (3) track appropriations of revenues which are deposited to the General Revenue Fund which are attributable to H.B. 1017.
¶ 18 62 O.S. 41.29a(C) also states that:
 Funds separately accounted for herein shall be used only to fund the reforms provided for in this act
and for no other purpose. Any appropriation or expenditure of any of such funds for any other purpose shall be null and void and of no effect.
(Emphasis added).
¶ 19 Oklahoma Constitution Article X, Section 23 requires a reduction in allocations for each state entity "in the ratio that its total appropriation for that fiscal year bears to the total of all appropriations from that fund for that fiscal year." (Emphasis added). Title 62 O.S. 41.9 (1981) requires that the Budget Director "shall make all reductions within each statefund where a revenue failure occurs apply to each [agency] in the ratio that its total appropriation for that fiscal year bears to the total of all appropriations for that fiscal year." However, neither provision defines the word "fund." Nor is the term defined elsewhere in the Constitution or statutes.
¶ 20 "Fund" is defined by Webster's Ninth New Collegiate Dictionary as "a sum of money or other resources whose principal or interest is set aside for a specific purpose." The definition contained in Black's Law Dictionary (West 5th Ed. 1979) is almost identical ("an asset or group of assets set aside for a specific purpose"). The word has been similarly defined by the courts of other States. State v. Finney, 40 P.2d 411, 421, (Kan. 1935) (sum of money set apart for a specific purpose); People v. NewYork Central Ry., 34 Barb. 123, 135 (1861) (merely a name for a collection of money).
¶ 21 Both the Legislature's stated intent in enacting 62 O.S.41.29a, and its obvious effect, is to separately set aside the revenues which result from tax changes contained in H.B. 1017 in order to ensure that the increase will be used specifically and solely for the purpose of funding the reforms contained therein. Similarly, if there is a "failure of revenue" as a result of the repeal of H.B. 1017, it will of necessity be within this separate fund. Accordingly, the Constitution and statutes require this fund — and the agencies which receive allotments from it — to absorb the revenue failure.
 IV.
¶ 22 Your last question concerns the proper characterization of monies contained within the General Revenue Cash-flow Reserve Fund created by 62 O.S. 10.1 (1990). Specifically, you ask whether monies within that fund are "revenues actually collected" within the meaning of Okla. Const. Article X, Section 23 ("the Legislature shall provide that all appropriations shall be reduced to bring them within revenues actually collected").
¶ 23 The General Revenue Cash-flow Reserve Fund was created for the purpose of making "cash available for the July cash allocation . . . so that, insofar as possible, each monthly cash allocation thereafter can equal one-twelfth (1/12) of the annual appropriation from the General Revenue Fund." 62 O.S. 10.1
(1990). The monies in the fund come from transfers made by the Director of State Finance when the apportionment to the General Revenue Fund is in excess of amounts required for the allocations necessary to fund appropriations for the then current fiscal year. Subsection 2 of 62 O.S. 10.1 states that:
 Any monies transferred to the General Revenue Cash-flow Reserve Fund pursuant to paragraph 1 of this section, shall be transferred by the Director of State Finance as nonrevenue receipts to the State General Revenue Fund in the amounts necessary to make cash available for the July cash allocation[.]
Id. (Emphasis added).
¶ 24 The plain language of the above section indicates that the monies in the Cash-flow Reserve Fund are not "revenues." This conclusion is buttressed by the Oklahoma Supreme Court decision in Draper v. State Board of Equalization, 414 P.2d 276 (Okla. 1966). In that case, the Court was asked to determine whether the State Board of Equalization had a duty to estimate and certify the average anticipated revenue which was to accrue to the Emergency Appropriation Fund, 62 O.S. 9.2 (1961) (repealed Okla. Sess. Laws 1973, c. 46, 19). Finding no such duty, the Court stated:
 The Emergency Appropriation Fund consists of "all moneys transferred, or authorized to be transferred, by the Legislature from any surplus cash arising incidentally from receipts in excess of appropriations to the credit of other funds in the State Treasury." In other words, accruals in the Emergency Appropriation Fund are not revenue, but such fund is simply a convenient account in which to transfer surplus funds from the General and Special Funds not needed to pay current year appropriations.
414 P.2d at 279 (citations omitted).
¶ 25 The Emergency Appropriation Fund and the Cash-flow Reserve Fund are clearly similar. Neither fund is supported directly by revenue, but by surpluses in other revenue funds. 62 O.S. 10.1
specifically directs the Director of State Finance to characterize deposits from the Cash-flow Reserve Fund as "nonrevenue receipts." This fact together with the Court's reasoning in Draper v. State Board leads to the conclusion that Cash-flow Reserve Fund monies are not "revenues." As such, Oklahoma Constitution Article X, Section 23(6)'s reference to "revenues actually collected" would not include monies in the Cashflow Reserve Fund.
¶ 26 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Article X, Section 23, paragraph 2 of the OklahomaConstitution requires that upon enactment by the Legislature ofany law providing for additional revenues or a reduction inrevenues, the State Board of Equalization must certify the amountof any resulting change in revenue available for appropriationfrom each respective fund. This paragraph of the Constitution issilent with respect to the procedure to be followed by the StateBoard when the change in revenue is the result of an act adoptedby the people through the initiative petition process. However,the clear intent of the Constitution is to notify the Legislatureof the amount of funds available for appropriation so as toprevent the Legislature from overappropriating.
 In the event House Bill 1017, 1990 Okla. Sess. Laws, c. 2(1989 First Extraordinary Session), is repealed by initiative,Article X, Section 23(2) of the Oklahoma Constitution requiresthe State Board of Equalization to certify the amount of anydecrease in revenues which results from such repeal, before theLegislature may pass or enact any further bills, acts or measuresmaking an appropriation of money from the affected funds, for thefiscal year(s) certified.
 2. Article X, Section 23 of the Oklahoma Constitution requiresthe Legislature to provide a method for reducing appropriationsto bring them within revenues actually collected. Under 62 O.S.41.9 (1981), in each state fund where a revenue failure occurs,the Budget Director must make a pro rata reduction in theallotments of each agency that receives money from that fund. Inthe event that revenues are decreased by the repeal of H.B. 1017,1990 Okla. Sess. Laws, c. 2 (1989 First Extraordinary Session), arevenue failure within the meaning of 62 O.S. 41.9 willoccur.
 3. Title 62 O.S. 41.29a (1990), passed pursuant to ArticleX, Section 23 of the Oklahoma Constitution contains severalprovisions designed to "guarantee that the increased revenuegenerated as a result of tax changes [contained in H.B. 1017] areappropriated to fund the education reforms" provided in the bill.Thus, each fiscal year the revenue generated by the tax increasesmust be separately certified by the State Board of Equalization;the Office of State Finance must separately account for andreport monthly on these revenues; and any appropriation orexpenditure of such funds must be used solely to finance thereforms of H.B. 1017; appropriations or expenditures for anyother purpose are declared by the statute to be null and void.
 The revenues received and accounted for pursuant to 62 O.S.41.29a (1990) clearly constitute a separate fund. Like anyrevenue increase to the fund, any revenue failure which resultsfrom the repeal of the tax changes contained in H.B. 1017,1990 Okla. Sess. Laws, c. 2 (1989 First Extraordinary Session), wouldnecessarily be absorbed by the separate fund also created by thatbill. 62 O.S. 41.9 (1981).
 4. The monies contained in the General Revenue Cashflow Fund,62 O.S. 10.1 (1990), come from transfers made by the Directorof State Finance when the apportionment to the General RevenueFund is in excess of that required to fund appropriations for thethen current fiscal year. Accordingly, they are not "revenues"for the purposes of determining the amount of revenues actuallycollected under Oklahoma Constitution Article X, Section 23.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
SHARON K. O'ROKE ASSISTANT ATTORNEY GENERAL
* State Question 639 failed in Special Election held October 15, 1991.
[1] "Appropriation . . . is the designation or authorization of the expenditure of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand." Smith v. Board of Equalization,630 P.2d 1264 (Okla. 1981).