Question Submitted by: The Honorable Preston L. Doerflinger, Director, Office of Management and Enterprise Services
2017 OK AG 6
Decided: 06/26/2017
Secretary of Finance, Administration and Information Technology
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 6, __ __

 
¶0 The Oklahoma Office of the Attorney General has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
If money is temporarily transferred pursuant to Section 34.55(A) of Title 62 of the Oklahoma Statutes from the Constitutional Reserve Fund to supplement the General Revenue Cash-flow Reserve Fund as needed to satisfy the monthly allocation of appropriations, does such a transfer violate Article X, Section 23 of the Oklahoma Constitution?
I.
Background
¶1 Oklahoma's Constitution specifies procedures to "ensure a balanced annual budget." Okla. Const. art. X, § 23. "Born out of the State's mounting debt in 1941, art. X, § 23 restricts appropriations of estimated revenues...." Fent v. State ex rel. Office of State Fin., 2008 OK 2, ¶ 13, 184 P.3d 467, 473. These constitutional requirements are generally focused on the yearly budget, while providing the Legislature with flexibility to meet the State's fiscal needs as they vary from month to month within a year. See Okla. Const. art. X, § 23.
¶2 Under Article X, Section 23, the State Board of Equalization (the "Board") must certify the amounts available to the Legislature for appropriation based on the State's projected revenues. See Okla. Const. art. X, § 23(1). The Legislature is restricted from making any appropriations that exceed that certified amount with some exceptions, such as if the Legislature enacts new laws providing for new revenue. See id. § 23(2). Moreover, the portion of every appropriation that exceeds actual revenue collected is null and void. Id. § 23(9).
¶3 If the amount of revenue actually collected exceeds the Board's projection, these funds are considered "surplus." Id. § 23(4). "All such surplus funds or monies shall be placed in a Constitutional Reserve Fund by the State Treasurer until such time that the amount of said Fund equals fifteen percent (15%) of the General Revenue Fund certification for the preceding fiscal year." Id. § 23(5). Outside of the Constitutional Reserve Fund, Article X, Section 23 generally "does not restrict appropriations of actual collected surplus monies." Fent, 2008 OK 2, ¶ 13, 184 P.3d at 473.
¶4 Article X, Section 23 also specifies the manners in which monies may be appropriated from the Constitutional Reserve Fund. First, if the forecasted certification for the upcoming fiscal year is less than the current year, up to three-eighths (3/8) of the fund may be appropriated for the upcoming year to make up for that difference. Okla. Const. art. X, § 23(6)(a). Second, in years where the forecasted certification is equal to or greater than previous years and the amount in the fund is greater than $80 million, up to $10 million "may be expended for the purpose of providing incentives to support retention of at-risk manufacturing establishments in this state in order to retain employment for residents of this state" pursuant to specified procedures. Id. § 23(6)(b). Third, in the event that the Board determines a revenue failure has occurred, the Legislature may appropriate up to three-eighths (3/8) of the fund for the current fiscal year to make up for the revenue failure. Id. § 23(7). Fourth, up to one-quarter (1/4) of the fund may be appropriated on declaration of "emergency conditions," either by the Governor with concurrence of two-thirds (2/3) of both the House and Senate or by joint declaration of the Speaker of the House and President Pro Tempore of the Senate with concurrence of three-fourths (3/4) of both bodies. Id. § 23(8).
¶5 In the event of a revenue failure for the fiscal year, "all appropriations shall be reduced to bring them within revenues actually collected" in proportion to the annual appropriation. Id. § 23(10). The Constitution also authorizes the Governor to issue "deficiency certificates" to the Treasurer for any given agency to help compensate for the revenue failure, with certain limitations and consequences. Id. And as noted above, the Legislature may also address a revenue failure through the raising of new revenue or appropriations from the Constitutional Reserve Fund through the specified procedures. Id. § 23(2), (7).
¶6 After the Legislature makes an appropriation to state agencies, that money does not immediately go in full to those agencies. Rather, because the State receives revenue throughout the year, monies are allocated monthly to each agency in proportion to its total appropriation. Id. § 23(9). The State's monthly revenues vary, however, typically due to seasonal variability or certain tax deadlines. Accordingly, the Constitution gives the Legislature the flexibility to create "a method whereby appropriations shall be divided . . . within each fiscal year to prevent obligations being incurred in excess of the revenue to be collected." Id. § 23(10). Moreover, the Legislature generally has the authority to "enact laws to provide for ... transferring ... unappropriated cash on hand from one fund to another," id. § 23(2), and thus is "specifically authorized" to create legislative "cash flow management devices." Calvey v. Daxon, 2000 OK 17, ¶ 23, 997 P.2d 164, 172.
¶7 In order to ensure a consistent flow of funds to appropriated agencies, the Legislature created the General Revenue Cash-flow Reserve Fund, which allows for "each monthly cash allocation [to] equal one-twelfth (1/12) of the annual appropriation." 62 O.S.Supp.2016, § 34.54. To create further stability and consistency the Legislature also has given the Director of the Office of Management and Enterprise Services (the "Director") the authority to "transfer monies from any treasury fund to the General Revenue Cash-flow Reserve Fund as required to satisfy monthly allocations scheduled from the General Revenue Fund." 62 O.S.Supp.2016, § 34.55(A). But, "any monies [] so transferred shall be repaid before any transfers are made from the General Revenue Fund to the General Revenue Cash-flow Reserve Fund for the subsequent fiscal year." Id.[1]
¶8 Your question involves the Director's authority to transfer monies from the Constitutional Reserve Fund, which is a treasury fund for the purposes of Section 34.55. We reach this conclusion based on the "plain and ordinary meaning" of the term, which is controlling "[e]xcept when a contrary intention plainly appears." H.B. Krug v. Helmerich & Payne, Inc., 2015 OK 74, ¶ 12, 362 P.3d 205, 211; see also 25 O.S.2011, § 1 ("Words used in any statute are to be understood in their ordinary sense..."). Under its plain meaning, a "treasury fund" is one that is housed in the State Treasury and over which the State Treasurer exercises some level of control. See, e.g., 62 O.S.2011, § 34.57(D) ("The State Treasurer is authorized to accept deposits directly to State Treasury funds" and "to accept checks deposited directly into State Treasury funds"); see also Webster's Third New Int'l Dictionary 2434 (2002) (defining "treasury" as "a governmental department having charge of finances (as the collection, management, and expenditure of public revenues)"). With respect to the Constitutional Reserve Fund, the State Treasurer[2] is charged with depositing surplus monies into the fund. See Okla. Const. art. X, § 23(5); see also A.G. Opin. 2005-28, at 151 (noting that "the Office of State Treasurer is directly affected by the balanced budget process" because the Constitution "assigns the State Treasurer a specific duty to place surplus funds in a Constitutional Reserve Fund"). Moreover, the Constitutional Reserve Fund is housed in the Treasury, under control of the State, available for appropriation, and not held in trust for another entity or a specific purpose. Cf. 74 O.S.2011, § 362 (stating that the Treasurer "shall have charge of and safely keep all public monies which shall be paid into the State Treasury, and pay out the same as directed by law").[3]
¶9 The issue posed by your question is: if the Director effectuates a temporary transfer under 62 O.S.Supp.2016, § 34.55 from the Constitutional Reserve Fund to satisfy the monthly allocation of appropriations, does such a transfer violate Article X, Section 23 of the Constitution?
II.
Analysis
¶10 Any constitutional analysis proceeds "with great caution" and starts with "a presumption that every statute is constitutional." Lafalier v. Lead-Impacted Cmtys. Relocation Assistance Trust, 2010 OK 48, ¶ 15, 237 P.3d 181, 188-89. Thus, courts "indulge every possible presumption that an act of the Legislature was constitutional." Adwon v. Okla. Retail Grocers Ass'n, 1951 OK 43, ¶ 11, 228 P.2d 376, 379. "If there is any doubt as to the Legislature's power to act in any given situation, the doubt should be resolved in favor of the validity of the action taken by the Legislature." Draper v. State, 1980 OK 117, ¶ 10, 621 P.2d 1142, 1146. In other words, a law must be upheld unless "its unconstitutionality is shown beyond a reasonable doubt." Schmitt v. Hunt, 1960 OK 257, ¶ 6, 359 P.2d 198, 200. A law will be deemed unconstitutional only if it "is clearly, palpably, and plainly inconsistent with the Constitution." Lafalier, 2010 OK 48, ¶ 15, 237 P.3d at 188; see also Zeier v. Zimmer, Inc., 2006 OK 98, ¶ 12, 152 P.3d 861, 866.
¶11 "The Legislature exercises the sovereign will unless restrained by the Constitution, and we look to the Constitution to determine whether the Legislature is prohibited from doing an act rather than to see if it is authorized." Wiseman v. Boren, 1976 OK 2, ¶ 3, 545 P.2d 753, 760-61 (Supplemental Opinion on Rehearing) (citing Draper, 1966 OK 87, 414 P.2d 276). In the context of acts authorized by statute in the budgetary process, the Oklahoma Supreme Court has stated that, "[e]xcept where it encounters a specific constitutional provision, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma." Calvey, 2000 OK 17, ¶ 21, 997 P.2d at 171 (emphasis added); see also Reynolds v. Fallin, 2016 OK 38, ¶ 6, 374 P.3d 799, 803. "Even if our Constitution does not specifically authorize" a particular fiscal act, the Legislature may accomplish it "unless our Constitution prohibits it." Wiseman, 1976 OK 2, ¶ 3, 545 P.2d at 760.
¶12 Turning to the question at hand, nothing in Article X, Section 23 expressly prohibits the Legislature from granting the Director authority under 62 O.S.Supp.2016, § 34.55 to effectuate a temporary transfer from the Constitutional Reserve Fund to the General Revenue Cash-flow Reserve Fund in order to satisfy equitable monthly allocations of appropriations, so long as those monies are returned to the Constitutional Reserve Fund within the period required by the statute. Nevertheless, the question remains whether the affirmative requirements of Article X, Section 23 clearly prohibit the Legislature from authorizing such an act.
¶13 It is true that Article X, Section 23 specifies the four methods by which the Legislature may appropriate money from the Constitutional Reserve Fund, as described above. Pursuant to standard tools of interpretation, these specified methods of appropriation are presumed to be exclusive, and the Legislature may not appropriate from the Constitutional Reserve Fund in any other manner. See Patterson v. Beall, 2000 OK 92, ¶ 24, 19 P.3d 839, 845 ("[T]he maxim 'expressio unius est exclusio alterius,' that the mention of one thing in a statute impliedly excludes another thing, is used to determine legislative intent.").[4] Otherwise, if the Legislature had a free hand in appropriating from the Constitutional Reserve Fund, these provisions of Article X, Section 23 would be a nullity. See Brown v. Claims Mgmt. Resources Inc., 2017 OK 13, ¶ 22, 391 P.3d 111, 118 ("We must interpret statutes in a manner which renders every word and sentence operative, not in a manner which renders a specific statutory provision nugatory.").
¶14 But not every action taken with respect to amounts in the Constitutional Reserve Fund is an "appropriation." And while Article X, Section 23 impliedly prohibits appropriations from the fund except those made under the specified circumstances, that exclusion does not apply to actions that do not constitute "appropriations." See Myers v. Okla. Tax Comm'n, 1956 OK 291, ¶ 19, 303 P.2d 443, 447 (expressio unius canon limited by the rule that "the express enumeration of powers is not exclusive of others not named unless accompanied by negative terms").[5] By way of analogy, merely because the Constitution specifies the surplus revenues that must be deposited into the Constitutional Reserve Fund does not mean that such revenues are the exclusive means of increasing the monies in the fund; the Legislature retains the discretion to put monies into the fund by other methods. Thus, the scenario posed by your question will only violate Article X, Section 23 if the transfer constitutes an appropriation or otherwise conflicts with that provision. We conclude that the transfer you describe does not violate Article X, Section 23 if four factors are met.
¶15 First
, the transfers in question must not result in a permanent outlay from the Constitutional Reserve Fund (i.e., an appropriation), but rather a temporary transfer between funds in the Treasury. The question of whether temporary transfers between funds in the Treasury constitute an appropriation is one of first impression.
¶16 Under the Oklahoma Constitution, "no money shall ever be paid out of the treasury of this State ... except in pursuance of an appropriation by law" and those appropriations "shall distinctly specify the sum appropriated and the object to which it is to be applied." Okla. Const. art. V, § 55 (emphasis added). Thus, an appropriation requires a "direction to a proper officer or officers to pay money out of the treasury." Edwards v. Childers, 1924 OK 652, ¶ 6, 228 P. 472, 473 (quoting Campbell v. State Soldiers' & Sailors' Monument Comm'rs, 115 Ind. 591, 18 N. E. 33) (emphasis added). Put in broad terms, an appropriation "is the designation or authorization of the expenditure[6] of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand." Smith ex rel. State v. State Bd. of Equalization, 1981 OK 57, ¶ 5, 630 P.2d 1264, 1266 (emphasis added). Thus, appropriations require at least (1) the permanent expenditure of State funds (2) designated to be paid out of the State Treasury.[7]
¶17 By contrast, a transfer between funds in the State Treasury, where the monies are to be paid back to the transferor fund, does not constitute an expenditure or appropriation from the transferor fund. Money is neither designated to be paid from that fund to an entity outside the Treasury, nor is such payment a permanent outlay or expenditure. It is true that a transfer from a fund may result in an appropriation when combined with actions that permanently reduce the amounts in that fund by expending money from the Treasury to the debit of that fund. Cf. Reynolds, 2016 OK 38, ¶¶ 12, 15, 374 P.3d 799, 805-07 (permanent transfer from one fund to another fund, followed by expenditure of those monies for state purposes, constituted an appropriation). But here, although there is temporarily less cash on hand, no loss has accrued to the Constitutional Reserve Fund because the amounts are to be paid back into the Fund in accordance with statute and the ultimate assets of the Fund remains unchanged. Accordingly, no appropriation has occurred.
¶18 Second
, the transfers in question must not alter the annual budget for the current fiscal year or change the amount available from the Constitutional Reserve Fund for the next fiscal year. The primary concern of Article X, Section 23 is ensuring a balanced yearly budget, while allowing the Legislature flexibility within a year to meet the State's month-to-month needs. See Okla. Const. art. X, § 23 (noting the purpose of "ensur[ing] a balanced annual budget") (emphasis added).[8] Indeed, despite its strict yearly budget requirements, the Constitution allows the Legislature to "provide a method whereby appropriations shall be divided and set up on a monthly, quarterly or semiannual basis within each fiscal year to prevent obligations being incurred in excess of the revenue to be collected." Id. § 23(10). Moreover, the Legislature may "enact laws to provide for ... transferring ... unappropriated cash on hand from one fund to another," id. § 23(2), and is thus "specifically authorized" to create legislative "cash flow management devices," Calvey, 2000 OK 17, ¶ 23, 997 P.2d at 172. Monies in the Constitutional Reserve Fund that have not been appropriated by the Legislature pursuant to the procedures of Article X, § 23(6)-(8) constitute "unappropriated cash on hand."[9]
¶19 Thus, the Legislature has permissibly allowed the Director to "transfer monies from any treasury fund to the General Revenue Cash-flow Reserve Fund as required to satisfy monthly allocations scheduled from the General Revenue Fund," but requires "any monies [] so transferred [to] be repaid before any transfers are made from the General Revenue Fund to the General Revenue Cash-flow Reserve Fund for the subsequent fiscal year." 62 O.S.Supp.2016, § 34.55(A). Assuming these statutory requirements are met, the Director's transfer of monies from the Constitutional Reserve Fund does not conflict with the annual balanced budget requirements of Article X, Section 23.
¶20 Third
, the transfers in question must not be made to avoid the appropriation reductions required in the event of an expected revenue failure. Instead, any such transfer must be based on a prudent determination that increased revenue later in the year will be available to repay the Constitutional Reserve Fund while also making unreduced monthly allocations of appropriations. The Constitution is clear that if revenue actually collected is lower than expected revenues, "the Legislature shall provide that all appropriations shall be reduced to bring them within revenues actually collected." Okla. Const. art. X, § 23(10) (emphasis added); see also 62 O.S.Supp.2016, § 34.49(F) ("In the event of a failure of revenue, the Director of the Office of Management and Enterprise Services shall control the allotment to prevent obligations being incurred in excess of the revenue to be collected" and "shall make all reductions apply to each state agency or special appropriation made by the State Legislature, in the ratio that its total appropriation for that fiscal year bears to the total of all appropriations for that fiscal year.").[10] We have previously interpreted this provision to impose a "duty to reduce allotments [] whenever the receipt of revenues do not occur as expected." A.G. Opin. 1991-19, at 72 (emphasis added). And the Legislature has given the Director the authority to review monthly allotments requested by agencies to determine whether "[t]he realization of the estimated revenues is sufficient to allow the allotments to be made." 62 O.S.Supp.2016, § 34.49(H)(4) (emphasis added).
¶21 Based on the foregoing, we conclude that if revenue in a given month is, as expected, lower than monthly needs because higher revenue in future months is expected to make up the difference, a temporary transfer would not contravene the duty to reduce appropriations when revenue is lower than expected. However, the Director may not transfer monies out of the fund in order to avoid cuts to monthly appropriation allocations when collected revenue is actually lower than good-faith expectations, which would then require future cuts to repay the fund. Ultimately, if the Director through proper due diligence and based on reasonable estimates effectuates a temporary transfer to meet monthly allocations with the expectation that revenues later in the year will be higher and sufficient to both meet monthly allocations (without reductions) and repay the fund, such a transfer will not conflict with the provisions of Article X, Section 23 related to revenue failures.
¶22 Fourth
, the transfers in question must not compromise the ability of the Legislature to make appropriations from the Constitutional Reserve Fund pursuant to Article X, Section 23. This constitutional provision "should be construed in consideration of its purpose and given a practical interpretation to carry out the plainly manifested purpose of the people who adopted it." Smith, 1981 OK 57, ¶ 9, 630 P.2d at 1267. Assuming, as a practical matter, that the Director's actions do not inhibit the Legislature's ability to appropriate monies from the Constitutional Reserve Fund, no unlawful interference with the Legislature's constitutional authority has occurred. On the other hand, if the Legislature is not able to accomplish a lawful appropriation from the fund because the Director has not replaced the transferred monies by the effective date of the Legislature's appropriation, the Director's actions will have violated the practical requirements of both Article V, Section 55 (by interfering with the Legislature's power to appropriate) and Article X, Section 23 (by interfering with the Legislature's appropriation authority over the Constitutional Reserve Fund).
¶23 All four of these factors must be met in order for the Director to permissibly effectuate a temporary transfer of funds from the Constitutional Reserve Fund pursuant to Title 62, Section 34.55(A). If, however, any of these four conditions are not met, the transfer will violate Article X, Section 23. The Constitution gives the Legislature inherent authority to "declare the fiscal policy of Oklahoma." Calvey, 2000 OK 17, ¶ 21, 997 P.2d at 171. In turn, through Title 62, Section 34.55(A) the Legislature has given the Director broad authority to manage cash flow issues in State treasury funds. The Legislature may choose to restrict that authority in the future through statutory limitations, checks, and balances in circumstances of special concern, like actions with respect to the Constitutional Reserve Fund that may jeopardize confidence in the ability of the Legislature to access the fund when needed. The Legislature may, for example, enact public notice requirements before a transfer can occur or restrict the amounts the Director may transfer from the Constitutional Reserve Fund. The Governor, too, as chief executive may choose to restrict the actions of the Director. See 62 O.S.Supp.2016, § 34.6 (granting powers and duties to the Director to exercise "under the direction of the Governor"). But they have not done so at this time, and the Constitution does not clearly forbid the Legislature from granting such authority to the Director.
¶24 It is, therefore, the Official Opinion of the Attorney General that transfers pursuant to 62 O.S.Supp.2016, § 34.55(A) from the Constitutional Reserve Fund to the General Revenue Cash-flow Reserve Fund as needed to satisfy monthly allocation of appropriations do not violate Okla. Const. art. X, § 23, so long as:
1. Such transfers are temporary transfers to other State funds that will be returned to the Constitutional Reserve Fund, and are not permanent expenditures out of the Treasury;
2. Such temporary transfers do not alter the annual budget for the current fiscal year or alter the amounts available for appropriation from the Constitutional Reserve Fund for the next fiscal year, but instead will be returned to the Constitutional Reserve Fund before any funds are expended or transferred from the General Revenue Fund for the next fiscal year;
3. Such temporary transfers are not made to avoid declaring a revenue failure and reducing appropriations as a result of a revenue failure, but instead such transfers are made based on a reasonable estimate that increased revenues later in the fiscal year will be available to both satisfy monthly allocations without reductions and repay the Constitutional Reserve Fund; and
4. Such temporary transfers do not have the practical effect of interfering with the Legislature's ability to appropriate monies from the Constitutional Reserve Fund.
Mike Hunter
Attorney General of Oklahoma
Mithun Mansinghani
Solicitor General of Oklahoma
FOOTNOTES
[1] The fiscal year begins on July 1 every year. Okla. Const. art. X, § 1.
[2] While the State Treasurer is charged with custody of the State's treasury funds, the Director, under the direction of the Governor, is also specifically empowered to "[p]repare the [State's] budget document," "[m]ake allotments to control expenditures," and "[a]uthorize transfers of appropriation authorized by law." 62 O.S.Supp.2016, § 34.6.
[3] This is in contrast with other funds held by State entities, but not under the control of the Treasurer because they are held in trust for specific purposes or other entities. See, e.g., Moran v. State ex rel. Derryberry, 1975 OK 69, ¶ 34, 534 P.2d 1282, 1288 (holding that "the funds of the State Insurance Fund are not State funds and do not belong to the State, that such funds are trust funds for the benefit of employers and employees, and are not available for the general or other purposes of the State, nor are they subject to appropriation by the Legislature for purposes other than those contemplated by the State Insurance Fund Act").
[4] See also Cont'l Cas. Co. v. United States, 314 U.S. 527, 533 (1942) ("The statement of the conditions negatives action without the satisfaction of those requirements. Generally speaking a 'legislative affirmative description' implies denial of the nondescribed powers . . . The conditions for action make action without meeting the conditions, we think, contrary to Congressional purpose, as expressed in the statute."); Raleigh & G.R. Co. v. Reid, 80 U.S. 269, 270 (1871) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode.").
[5] See also Greenberg v. Wolfberg, 1994 OK 147, ¶ 24 n.54, 890 P.2d 895, 906 n.54; Christensen v. Harris Cty., 529 U.S. 576, 583 (2000).
[6] To "expend" generally means to "pay out" and "consume by use" in a permanent or exhaustive fashion. Webster's Third New Int'l Dictionary 799 (2002).
[7] For example, when the Legislature appropriates from the Constitutional Reserve Fund to grant manufacturing incentives pursuant to Article X, Section 23(6)(b) of the Constitution, that money is paid out of the State to private entities that have no obligation to pay those funds back to the State. Thus, this effectuates an appropriation because it permanently expends funds out of the State Treasury.
[8] Similarly, Article X, Section 23 requires certification by Board of Equalization of "the revenues to be received by the state . . . for the next ensuing fiscal year." Okla. Const. art. X, § 23(1) (emphasis added). That certification, after adjustments, determines "the maximum amount which can be appropriated for all purposes from any such fund for the fiscal year being certified." Id. § 23(2) (emphasis added). And "[t]hat portion of every appropriation, at the end of each fiscal year, in excess of actual revenues collected and allocated thereto, as hereinafter provided, shall be null and void." Id. § 23(9) (emphasis added). Meanwhile, yearly surplus funds are placed in the Constitutional Reserve Fund and can be appropriated either for the current or for the subsequent fiscal year if certain conditions are met. Id. § 23(5)-(8).
[9] That these funds are "unappropriated" is clear from two pieces of textual evidence. First, Article X, Section 23(6)-(8) specifies the means by which the Legislature may "appropriate" from the Constitutional Reserve Fund, necessarily implying that the monies in that fund are otherwise unappropriated. Second, when the Legislature effectuates such an appropriation, it generally is not restricted in the purposes to which it may apply those funds, whereas if those funds were already "appropriated," the purpose to which they are dedicated must have already been specified. See Okla. Const. art. V, § 55 (appropriations "shall distinctly specify ... the object to which it is to be applied"); Smith, 1981 OK 57, ¶ 5, 630 P.2d at 1266 (defining appropriation as "the designation or authorization of the expenditure of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand").
[10] As noted above, this result can be avoided through enacting new revenue measures, issuing of deficiency certificates, or proper appropriations from the Constitutional Reserve Fund. Okla. Const. art. X, § 23(2), (7), (10).

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1994 OK 147, 890 P.2d 895, 65 OBJ 4220, 
Greenberg v. Wolfberg
Discussed

 
1956 OK 291, 303 P.2d 443, 
MYERS v. OKLAHOMA TAX COMMISSION
Discussed

 
1960 OK 257, 359 P.2d 198, 
SCHMITT v. HUNT
Discussed

 
1966 OK 87, 414 P.2d 276, 
DRAPER v. STATE BOARD OF EQUALIZATION
Discussed

 
2000 OK 92, 19 P.3d 839, 71 OBJ 3016, 
PATTERSON v. BEALL
Discussed

 
2006 OK 98, 152 P.3d 861, 
ZEIER v. ZIMMER, INC.
Discussed

 
2008 OK 2, 184 P.3d 467, 
FENT v. STATE ex rel. OFFICE OF STATE FINANCE
Discussed at Length

 
2010 OK 48, 237 P.3d 181, 
LAFALIER v. THE LEAD-IMPACTED COMMUNITIES RELOCATION ASSISTANCE TRUST
Discussed at Length

 
1924 OK 652, 228 P. 472, 102 Okla. 158, 
EDWARDS v. CHILDERS
Discussed

 
1975 OK 69, 534 P.2d 1282, 
MORAN v. STATE EX REL. DERRYBERRY
Discussed

 
1976 OK 2, 545 P.2d 753, 
WISEMAN v. BOREN
Discussed at Length

 
2015 OK 74, 362 P.3d 205, 
KRUG v. HELMERICH & PAYNE, INC.
Discussed

 
2016 OK 38, 374 P.3d 799, 
REYNOLDS v. FALLIN
Discussed at Length

 
2017 OK 13, 391 P.3d 111, 
BROWN v. CLAIMS MANAGEMENT RESOURCES INC.
Discussed

 
1980 OK 117, 621 P.2d 1142, 
Draper v. State
Discussed

 
2000 OK 17, 997 P.2d 164, 71 OBJ 721, 
Calvey v. Daxon
Discussed at Length

 
1981 OK 57, 630 P.2d 1264, 
Smith ex rel. State v. State Bd. of Equalization
Discussed at Length

 
1951 OK 43, 228 P.2d 376, 204 Okla. 199, 
ADWON v. OKLAHOMA RETAIL GROCERS ASS'N
Discussed

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 1, 
Meaning of Words
Cited

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 34.57, 
Agency Clearing Accounts - Deposits - Transfers - Exemptions
Cited

 
62 O.S. 34.54, 
Creation of General Revenue Cash-flow Reserve Fund - Purpose
Cited

 
62 O.S. 34.55, 
Transfer of Monies to Fund
Discussed at Length

 
62 O.S. 34.6, 
General Powers and Duties of Director
Discussed

 
62 O.S. 34.49, 
Allotment of Appropriations and Federal Funds - Exemption for Legislature
Discussed

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 362, 
Custody of Public Money
Cited