**BERRYHILL et al. v. CITY OF SAPULPA et al. and**
**GIBBS et al. v. CITY OF SAPULPA et al.**

Nos. 12277 and 12303, Consolidated—Opinion Filed Dec. 11, 1923.

Rehearing Denied Jan. 22, 1924.

**1. Statutes—Time of Taking Effect.**

The ordinary rule is that legislative enactments become operative on their passage, unless there is some express provision of law to the contrary. Gay v. Engebretsen (Cal.) 109 Pac. 876.

**2. Municipal Corporations—Ordinances — Time of Taking Effect.**

A municipal ordinance may be published at any time when the time of publication is not fixed by statute. When the statute provides that the ordinance shall go into effect within a specified time after it is published, if it is never properly published, it never goes into effect, but when the statute merely provides that it shall be published a certain number of times within a specified time after its enactment, it goes into effect at once subject to defeasance if it is not properly published. R. C. L., page 902.

**3. Same—Special Assessment Ordinance— Limitation of Actions.**

The sixty day period of limitation, provided for in section 471, Rev. Laws 1910 (sec. 4408, 1921), begins to run from the date of passage of the assessing ordinance and not from the date of last publication of same.

**4. Same—Applicability of Limitation — Jurisdictional Defects.**

The sixty-day statute of limitations provided in said act applies to suits involving irregularities in procedure, but does not apply to jurisdictional defects rendering the proceedings void. Grier v. Kramer, 62 Okla. 151, 162 Pac. 190.

**5. Same.**

That a city paid a sewer contractor more than the amount provided for in his contract, or more than a reasonable profit on the construction of same, or the fact that same was not constructed according to plans and specifications, if illegal at all, are irregularities and not a jurisdictional defect. Grier v. Kramer, 62 Okla. 151, 162 Pac. 190.

Error from Superior Court, Creek County ("Berryhill Case"); Gaylord R. Wilcox, Judge.

Error from District Court, Creek County ("Gibbs Case"); Redmond S. Cole, Judge.

Hughes, Foster & Ellinghausen and McDougal, Lytle, Allen & Pryor, for plaintiffs in error.

Charles B. Rockwood, Streeter Speakman, Randolph, Haver & Shirk, R. K. Robertson, and H. M. Gray, for defendants in error.

Actions by Theodore Berryhill and others and M. D. Gibbs and others against the City of Sapulpa and others. Judgment for defendants, and plaintiffs appeal. Cases consolidated on appeal and affirmed.

Opinion by JONES, C. The court is here considering two cases which by order of the court have been consolidated, one appealed from the superior court of Creek county, state of Oklahoma, which is referred to as the Berryhill Case, No. 12227, and the other appealed from the district court of Creek county, which is referred to as the Gibbs Case and is numbered 12303 in this court. On the 19th day of February, 1920, M. D. Gibbs and a number of other tax payers of the city of Sapulpa, property owners, in a certain storm sewer district designated as number seven, filed action against the city of Sapulpa and its officers in the district court asking an injunction against the city and its officers to prevent them from levying an assessment against the various property owners in said sewer district number seven for the purpose of paying for a sewer constructed in said district, and a portion of same was alleged to be beyond the district and city limits. The petitions in both cases are practically the same, and in both an injunction is prayed for, and the right to injunction is based, briefly stated on the following allegations:

"First. That the advertisement for bids for the construction of the sewer antedated the ordinance authorizing the advertisement.

"Second. No plans or specifications were filed as by law provided.

"Third. The contract let was not in conformity with the plans on file.

"Fourth. The work was not done in compliance with the plans and specifications on file or the terms of the contract.

"Fifth. The assessing ordinance was passed before the completion of the work.

"Sixth. The variance between the work actually done and the plans and contract was so great as to make the assessing ordinance and the work done thereunder void.

"Seventh. The charge is grossly exorbitant and the assessments amount to an actual confiscation of property in the district.

"Eighth. There was no necessity for the improvement in the first instance; it conferred no benefits on the property involved.

"Ninth. A portion of the sewer was outside the district affected and some of it outside the city.

"Tenth. The sewer was not located where the plans called for its location."

The Gibbs Case was submitted to the district court and upon request the court made the following findings of fact and conclusions of law, and it is agreed that practically the same findings of facts and conclusions of law would have been made in the Berryhill Case, in which case the court sustained a demurrer to the testimony of the plaintiffs and to which order and judgment of the court the plaintiffs appeal. The findings of fact are as follows:

"Second. On December 12, 1919, the mayor and commissioners of the city of Sapulpa passed a resolution, No. 400, reciting that it was 'necessary to establish a storm sewer district and to construct therein a storm sewer for drainage purposes' in the district affected, same being described in the resolution, and the city engineer was instructed to prepare the necessary sections, profiles, plats, and subdivisions for the work to be done and the material to be used therein.

"Third. On December 14, 1919, the city engineer of Sapulpa left with the city clerk of Sapulpa numerous papers, maps, etc., touching upon the proposed improvements. Among those papers were a map of the district, a profile of the proposed sewer lines, an estimate of the cost, and certain alleged specifications touching on the improvement contemplated. Most of these papers were unsigned, few if any were labelled so that a stranger might know without being advised by the city clerk or city engineer or some one familiar with the proposed improvement what they were. Apparently the papers, maps, etc., were never fastened together and none of them were ever marked, filed and do not now show any filing mark. All times these maps and plans, etc., were retained by the said clerk as a part of his files.

"Fourth. With the maps and plans was a document signed by the city engineer in which is an estimate of the cost of the contemplated work. This estimate was as follows:

"Cost of work _____$85,000
"Plus printing and engineer's fees, 2 per cent_____ 1,700
　　　　　　　　　　　　　　　　　　　――――――
"Total _____ 86,700

"This estimate was prepared on a typewriter but the various items going to make up the basis of the estimate were changed and the items entered in ink. There was a substantial change in the same. It appears from the evidence that the estimate was made on the figures as changed and not on the original typewritten figures. This change was made some time prior to the reception of bids. It appears that the principal item in said estimate as corrected as 'segment block e' 2515, len. Ft.' The original estimate showed 'segment block 4,' '3150 ft.' There were other changes of like character in several other items.

"Fifth. On December 15, 1919, the mayor and commissioners of the city of Sapulpa adopted ordinance No. 470 providing for the sewer dist. No. 7 and the construction therein of a storm sewer. In said ordinance appears this language: 'Sec. 2. That a part of said sewer, to wit: 3150 feet to be a two-ring segment block sewer, four feet in diameter laid in cement, laterals to be of tile of proper dimensions as more particularly shown by the plats, plans, profiles and specifications prepared by the city engineer and now on file in the city clerk's office.'

"By the terms of the ordinance the city clerk was authorized to cause the proper notice to be published calling for the bids for the furnishing of the labor and material for the construction of said sewer.

"Sixth. The ordinance as passed and the notice of the clerk for bids were both published on December 16, 1919, in the Sapulpa Herald.

"Seventh. On December 29, 1919, the mayor and commissioners in regular commissioners' meeting opened the bids. It appeared that four bids were submitted as follows:

"Tibbett & Pleasant _____$87,500
"Dan Tankersley _____ 84,875
"Comstock & Smedley_____ 86,000
"F. P. McCormick_____ 87,360

"At said time the contract was let to Tankersley. The contract signed by Tankersley was in substantial compliance with the specifications that were left with the

clerk.

"Eighth. On December 2, 1920, the city engineer submitted to the mayor and the city commissioners his final estimate of the work in the amount of $95,771.32.

"Ninth. On December 10, 1920, the mayor and city commissioners passed ordinance No. 493, assessing the costs of the construction of the storm sewer and apportioning the same against the property within the district. This ordinance was duly published in the Creek County Republican, a paper of general circulation within the city of Sapulpa, in its said publications of December 17th, 24th, and 31st, 1920, and January 7, 1921.

"Tenth. On February 19, 1921, this action was commenced by the plaintiffs by filing a petition with the clerk of this court and causing summons to be issued and served on the several defendants.

"Eleventh. The plans, maps, profiles and specifications on file were not sufficiently definite and complete as to enable a stranger to the proposed work to submit an intelligent bid thereon without consulting the city engineer as to the contemplated work. The plans called for twelve manholes and twenty catch basins. There were no specifications filed showing how these were to be constructed nor the materials that were to be used therein.

"Twelfth. At the time of the publication of the assessing ordinance the work was completed except for certain manholes and catch basins; the contractor agreed with the city engineer that this work would be completed as soon as he could get the necessary materials from the factory. It appears that they were waiting for some metal covers. This work was subsequently done except at the time of the hearing there were a few minor details of the work remaining unattended to owing to the inability of the contractor at that time to secure the materials from the supply house.

"Thirteenth. The estimate called for 8,000 yards of excavation; there was actually excavated 4,534 yards.

"Fourteenth. The estimate called for twelve manholes; only ten were constructed. The estimate called for twenty catch basins; but twelve were constructed. 380 feet of the sewer extended beyond the city limits, 1,290 feet of the sewer were constructed beyond the street center and beyond the line shown in the plans and specifications. From the only evidence offered on the subject, it appears that the work could have been duplicated for $35,000.

"Fifteenth. Most of the lots in the area affected by the assessing ordinance are unimproved lots and are worth not to exceed $100 each on an average. The assessments average about $125 per lot. The land covered by the district is rolling; the streets unpaved.

"Sixteenth. The court finds from the evidence that the work done in sewer dist. No. 7, in the construction of said sewer was done after due notice had been given to those whose property was affected; that no objection or protests were ever filed with the mayor or city commissioners against the proposed work, or the manner in which it was being done; the first attack on the regularity or validity or any of the proceedings had or work done was on the filing of the suit herein on the 19th day of February, 1921."

And the following conclusions of law are found by the court:

"First. The mayor and city commissioners of the city of Sapulpa were empowered under the law to determine the necessity of establishing the sewer district in question, and the finding of said mayor and commissioners as to the necessity for such improvement is final and is not subject to review by this court, there being no showing that in the exercise of their legislative powers they abused that authority or that the ordinance is so unreasonable and oppressive as to render it void.

"Second. It was within the power of the city commissioners to advertise for bids in the same issue of the paper in which the ordinance was published.

"Third. The leaving of the papers and maps touching on the proposed improvement with the city clerk of the city of Sapulpa was a compliance with the statute and the failure of the clerk to mark the same filed was an irregularity which cannot be taken advantage of in this action.

"Fourth. The construction of a small section of sewer outside the district affected was within the power of the mayor and city commissioners of the city of Sapulpa.

"Fifth. The act of estimating the work done in the sewer construction, while done incorrectly and shows excessive charges, is an irregularity and does not go to the jurisdiction of the city in levying the assessments for the work or in issuing tax warrants therefor; and the only time when advantage by a suit in equity could be taken of this irregularity is within sixty days after the passage of the ordinance making the assessment for the work done.

"Sixth. Inasmuch as no suit was commenced to set aside the assessment of the mayor and commissioners until more than sixty days after the making of such assessment, the suit is barred by the provisions of section 471, Rev. Laws 1910.

"Seventh. It being apparent that some benefit has accrued to the property holders, the plaintiffs herein, they cannot maintain this action inasmuch as they have not offered to do equity by paying or of-

fering to pay for the benefits accruing to them.

"Eighth. The petition of the plaintiffs should be denied and the costs assessed to said plaintiffs.

"Redmond S. Cole, Judge."

Numerous assignments of error are set forth in the Berryhill Case, in which they assign as error the sustaining of a demurrer of defendants in error to the evidence offered by the plaintiffs in error and specifically urge that the court was in error in finding that the 60 days statute of limitation had run before the institution of the suit, and in the Gibbs Case various errors are assigned in which they except to all of the findings of facts and conclusions of law of the court which had been heretofore set forth in this opinion, but especially urges that the court was in error in holding the assessing ordinance was not prematurely passed in view of the fact that the court found that at the time of the accepting of the work and the passing and approval of the assessing ordinance, the work was not completed.

And, second, that the court was in error in holding that the passage of the ordinance making the assessment was the date from which the 60 day statute of limitation would begin to run rather than the date of the last publication.

There are other propositions discussed by counsel in brief, but we think the above are decisive of the rights of the parties and will make no further mention of other assignment of errors complained of except that wherein the plaintiffs in error contend that this appeal should be dismissed because of the fact that confession of error was filed in the Supreme Court by defendants in error, but from an examination of the records we find that this court heretofore disposed of that contention and sustained the objections interposed to the motion by counsel who represented defendants in error and Dan Tankersley, the contractor, who, while not a party to the case, is vitally interested in the case and his rights have been recognized by all parties concerned at all times pending the prosecution of these suits.

The first proposition urged in the brief of plaintiffs in error is the error of the court in holding that the assessing ordinance was not prematurely passed. The undisputed facts on this point show that at the time the engineer filed an estimate of cost with the city council, and at the time the assessing ordinance was passed, that the manholes, or at least some of them, were uncovered, the grates or covers

for same not having been received by the contractor, but had been ordered, and we take it from the record they were afterward received and put in place, and some small amount of labor was necessary to the completion of certain catch basins, but we think the court was correct in finding that the contract was substantially complete.

The second, and we think the decisive issue in this case raised by the assignment of error, is that of whether or not the 60-day statute of limitation had run at the time of the institution of these suits. It is admitted that the suits were not instituted until more than 60 days after the passasge of the assessing ordinance, but within 60 days from the last publication made of the ordinance. The facts are that the city engineer made and filed a final estimate of the cost of construction on December 2, 1920, and thereafter, to wit, on the 10th day of December, 1920, the mayor and commissioners of the city of Sapulpa passed the assessing ordinance, assessing the cost of construction against each and every lot in said sewer district as provided by law, and in accordance with section 469, Rev. Laws 1910, being section 4406, Comp. Stat. 1921, and published said ordinance on December 17th, 24th, 31st, 1920, and January 7, 1921, and the question is whether or not the 60-day statute of limitation began at the time of the passage of the ordinance or until the final publication was made, to wit, January 7, 1921.

Defendants in error cite the case of Woodward v. City of Tulsa, 81 Okla. 58, 196 Pac. 683, and numerous other authorities are cited upholding the 60-day statute of limitation, but these authorities are of but little aid to the court in determining the question involved which is not a question of whether the 60-day statute of limitation applies or not, but whether the date from which you should reckon time was that of the passage of the ordinance by the mayor and city council, or that of the date of the last publication of the ordinance, and while the question is discussed by the plaintiffs in error in their brief, no authorities are cited in support of the contention by either party; however, this being an important question, the court has spent some time in an effort to discover the correct rule, and we find in 19 R. C. L., sec. 201, page 902, a discussion of the question as follows:

"A municipal ordinance may be published at any time when the time of publication is not fixed by the statute. When the statute provides that the ordinance shall go into effect within a specified time after it is published, if it is never properly published it never goes into effect, but when

the statutes merely provide that it should be published a certain number of times within a specified time after its enactment, it goes into effect at once, subject to defeasance if it is not properly published. \*\*\*"

And, further, we find the case of Gay v. Engebretsen, 158 Cal. 21, 109 Pac. 876, 139 A. S. R. 67, in which the following rules are announced: Paragraph 3 of the syllabus of the opinion is as follows:

"The ordinary rule is that legislative enactments become operative on their passage unless there is some express provision of the law to the contrary."

In the fourth paragraph of the syllabus of the same authority it was held:

"That while the passage of a resolution ordering the work done is a necessary preliminary to the right to award the contract the statute does not require the publication of the resolution ordering the work done to be fully made in advance of the call for bids."

This rule applies to one of the objections raised by plaintiffs in error, and to the first allegation in plaintiffs' petition.

In the opinion in the above case, citing People v. Clark, 1 Cal. 406, and City of Sacramento v. Dillman, 102 Cal. 107, 36 Pac. 385, the court said:

"This court has held that under the city charter, providing that the board of trustees should publish all ordinances for ten days, but containing no provisions that an ordinance should not take effect until after its publication, an ordinance regulating liquor license took effect on its passage. \* \* \*"

"The principle of this decision is applicable here. The appellant cites several cases in which the completion of publication was held to be essential to the taking effect of an ordinance; but an examination of these cases show that in each instance the charter or law authorizing the adoption of the ordinance expressly provides that the enactment would not be effective until published."

And in the above case the court held that the ordinance was effective from the date of its passage and not from the date of publication. We think this case is practically identical with the case at bar and that the California statute is evidently of the same nature and character as our statutes. Section 469, Rev. Laws 1910, being sec. 4406, Comp. Stat. 1921, is as follows:

"As soon as any district sewer shall have been completed, the city or town engineer or other officer having charge of the work shall compute the whole cost thereof, which shall also include all other expenses incurred by the city or town in addition to

the contract price of the work, and shall apportion the same against all the lots or pieces of ground in such district, exclusive of improvements, in proportion to the area of the whole district, exclusive of the public highways, and such officer shall report the same to the mayor and councilmen and the mayor and councilmen or the board of trustees shall thereupon levy and assess a special tax, by ordinance, against each lot or piece of ground within the district, which ordinance shall be published in some newspaper of general circulation in the city for four consecutive weeks, and if, at the expiration of such time, if the amount named in such ordinance, together with cost of publication, shall not be paid then the mayor and councilmen or the board of trustees shall cause tax warrants to be issued against such lots and pieces of ground in said district, which tax warrant shall recite the date of the passage of the ordinance making the assessments, the amount of the assessment, the description of the property against which the same is levied, and that the same will be levied against said property in three equal installments with interest thereon at the rate of eight per cent. per annum, levied each year, to become due on the fifteenth day of December next after each such levy, to pay the maturing installments; and said tax warrants shall be signed by the mayor or president, as the case may be, countersigned by the city or town clerk, and delivered to the contractor: Provided, that the aggregate amount of such warrants delivered to the contractor shall not exceed his contract price, and the municipality shall hold and retain for its own indemnity a sufficient amount of the same to cover other expenses than the contract price of executing the work."

And we call special attention to that portion of the section referred to as follows:

"And the mayor and councilmen or the board of trustees shall thereupon levy and assess a special tax by ordinance, against each lot or piece of ground within the district, which ordinance shall be published in some newspaper of general circulation in the city for four consecutive weeks, and if at the expiration of such time, the amount named in such ordinance, together with the cost of publication shall not be paid, then the mayor and councilmen or the board of trustees shall cause tax warrants to be issued," etc.

And also provides that the tax warrant shall recite the date of the passage of the ordinance making the assessment. The statutes contain no provision requiring publication of the ordinance for the purpose of giving it effect. Clearly under our statutes the purpose of publication, which recites the amount of the tax levied against each

particular lot is to give to the owner of same an opportunity to pay the tax and avoid the necessity of having the tax warrant issued against his property.

In the case of the City of Sacramento v. Dillman, supra—

"The charter of the city provided that the board of trustees 'shall publish all ordinances for ten day in some newspaper published in said city.' Statutes 1863, page 415, sec. 16. Appellant contends that this required all ordinances to be published by order of the board, and that as the ordinance in hand was not so published, it never became valid and effective. In support of this position several decisions of this court are cited, but they were all made in cases for enforcement of street assessments, where publication was declared necessary to give the boards jurisdiction to make orders for the proposed improvements. Those cases are not in point here. In this case there was no provision that the ordinance should not take effect till after its publication, and, in our opinion, it took effect on its passage; and publication thereafter was a ministerial act to give the people notice of its requirements, like the publication of statutes after they are passed by the Legislature."

And in the case of People v. Cole, 70 Cal. 59, 11 Pac. 481, it was held that:

"Although there was express direction that the ordinance should be recorded, yet the recording was not a condition precedent to its taking effect."

And in the case of Com. v. Davis, 140 Mass. 485, 4 N. E. 577, it was held:

"That the requirement that a city ordinance should be published was directory merely."

These authorities we think are conclusive and decisive of the paramount question in this case and we think that manifestly the other errors complained of go merely to what is termed as irregularities and while they may contain much merit and were it possible for the court to take jurisdiction they would deserve consideration, but in view of the fact that the statute of limitation had run prior to the institution of these suits the court is helpless and without authority to render aid.

We therefore recommend that each of the cases, herein consolidated, be affirmed.

By the Court: It is so ordered.