2016 OK 38

Michael D. REYNOLDS, a Resident Taxpayer of the State of Oklahoma, and for the Benefit of the other millions of Oklahoma Taxpayers and non-resident Taxpayers, Plaintiff/Appellant

v.

1. Mary FALLIN, Governor of the State of Oklahoma and the Governor's Office; 2. Ken Miller, Treasurer of the State of Oklahoma and of the State Treasurer's Office; and custodian of the State's Funds one being the General Revenue Fund; 3. Preston Doerflinger, State Director of the Office of Management and Enterprise Services; 4. John Doe and/or Mary Doe, Attorneys for State of Okla-

homa and/or State officials, etc. for legal malpractice in their advice that the General appropriation Bills and/or each of their Sections of the Bills are constitutional and/or lawful, Defendants/Appellees.

No. 114,481.

Supreme Court of Oklahoma.

March 29, 2016.

Jerry R. Fent and Ted Pool, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Jared B. Haines, Asst. Solicitor General and Mithun S. Mansinghani, Deputy Solicitor General, Office of the Attorney General, Oklahoma City, Oklahoma, for Defendants/Appellees.

COMBS, V.C.J.:

## PROCEDURAL HISTORY

¶ 1 At issue here is the constitutionality of various provisions of three general appropriation bills enacted in 2012 through 2014. On July 29, 2015, the Appellant (Reynolds) filed an amended petition[1] presenting 18 causes of action concerning SB 1975 (2012 Okla. Sess. Laws c. 311), HB 2301 (2013 Okla. Sess. Laws c. 313), and SB 2127 (2014 Okla. Sess. Laws c. 420). Reynolds asserts these three general appropriation bills contain substantive legislation in violation of Okla. Const. art. 5, § 56 and some sections do not specify the object for the appropriation in violation of Okla. Const. art. 5, § 55. He also asserts these bills violate the balanced budget provisions of Okla. Const. art. 10, § 23 because some of their sections become effective on dates other than July 1, the beginning of the fiscal year.[2] In addition, he claimed several sections of the bills are constitutionally invalid because they appropriate money from prior years or multi-years in violation of Okla. Const. art. 10, § 23.

¶ 2 Reynolds sued the Defendants/Appellees, Mary Fallin, Governor of the State of Oklahoma; Ken Miller, Treasurer of the State of Oklahoma; Preston Doerflinger, State Director of the Office of Management and Enterprise Services (Appellees) and various unnamed state attorneys for their alleged involvement with the three general appropriation bills.[3] On August 18, 2015, Appellees filed a motion to dismiss Reynolds' amended petition for failure to state any claims for which relief may be granted. In Reynolds' response he did not specifically

refute the argument and authorities presented in this (second) motion to dismiss.[4] He instead presented a new theory that all three general appropriation bills were somehow unconstitutional because the Attorney General of Oklahoma had previously determined that one section of SB 2127 (2014 Okla. Sess. Laws c. 420, § 144) contained substantive language[5]; this section, however, was not challenged in the amended petition and consisted of language different from that challenged. On the same day that Reynolds filed his response to the motion to dismiss, August 28, 2015, he filed a motion for summary judgment which mirrored his response.

¶ 3 A hearing was held on September 25, 2015, concerning the motion to dismiss and Reynolds' motion for summary judgment. The journal entry of judgment, filed November 4, 2015, held the challenged transfers from revolving funds were not substantive provisions in violation of Okla. Const. art. 5, § 56. The court also held Reynolds' other causes of action did not state claims upon which relief may be granted for the reasons stated in Appellees' motion to dismiss. The district court granted Appellees' motion to dismiss the amended petition and denied Reynolds' motion for summary judgment.

¶ 4 Reynolds filed a petition in error on November 30, 2015, appealing the district court's judgment denying his motion for summary judgment and granting Appellees' motion to dismiss the amended petition. This Court retained the appeal on December 22, 2015, and made it a companion to the appeal filed under Case No. 114,482.[6] This appeal is

---

1. The district court dismissed Reynolds' petition on July 10, 2015, but granted him leave to file an amended petition, which is the subject of this appeal. Case No. CJ–2015–2685, District Court of Oklahoma County, Oklahoma. *See* 12 O.S. 2011, § 2012(G); *Kelly v. Abbott*, 1989 OK 124, 781 P.2d 1188.

2. Okla. Const. art. 10, § 1.

3. In his issues to be raised on appeal in his petition in error, Reynolds does not raise as error any ruling concerning the alleged malpractice committed by state attorneys and therefore such issues are not a subject of this appeal and will not be addressed.

4. The first motion to dismiss which concerned Reynolds' petition was filed on June 1, 2015.

5. 2014 OK AG 7.

6. Robert N. Dani, as a resident beneficiary taxpayer claimant of the State Of Oklahoma Uniform Unclaimed Property Act Trust and for the benefit of all the other 938,021 (more or less) resident and non-resident beneficiary claimants of the Trust, Plaintiff/Appellant, vs. (1) Ken Miller, in his official capacity as Treasurer of the State of Oklahoma and Trustee of the State's Uniform Unclaimed Property Act Trust; and (2) State of Oklahoma; and (3) John Doe and/or Mary Doe, Attorneys for the State of Oklahoma

filed under Okla.Sup.Ct.R. 1.36, 12 O.S. Supp. 2013, Ch. 15, App. 1, as an accelerated appeal. There has been no briefing ordered and therefore our review will be confined by the issues raised on appeal in the petition in error. Reynolds' motion to set this matter for oral argument is denied.

### STANDARD OF REVIEW

¶5 Our review of a trial court's dismissal for failure to state a claim upon which relief can be granted involves a *de novo* consideration of whether the petition is legally sufficient. *Indiana Nat. Bank v. State Dept. of Human Services,* 1994 OK 98, ¶2, 880 P.2d 371. The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts. *Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶7, 176 P.3d 1204. A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory. *Id.*

¶6 Except where prohibited by the Constitution, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma. *Calvey v. Daxon,* 2000 OK 17, ¶21, 997 P.2d 164.[7] There is a strong presumption which favors the constitutionality of legislative acts. *Fent v. Contingency Review Bd.,* 2007 OK 27, ¶22, 163 P.3d 512; *TXO Production Corp. v. Oklahoma Corp. Com'n,* 1992 OK 39, ¶7, 829 P.2d 964; *Black v. Ball Janitorial Service, Inc.,* 1986 OK 75, ¶5, 730 P.2d 510. When a legislative enactment is attacked we will indulge every reasonable intendment in applying and interpreting the same in light of the Constitution. *Edwards v. Childers,* 1924 OK 652, ¶27, 102 Okla. 158, 228 P. 472. A party challenging the constitutionality of legislation has a heavy burden of showing its infirmity by persuasive argument and analysis with authority. *Fent,* 2007 OK 27 at ¶22, 163 P.3d

512. If there are two possible interpretations, one of which would hold the enacted legislation unconstitutional, then this Court must apply the interpretation which renders it constitutional. *Calvey v. Daxon,* 2000 OK 17, ¶24, 997 P.2d 164. Unless a law is shown to be fraught with constitutional infirmities beyond a reasonable doubt, we are bound to accept an interpretation that avoids constitutional doubt as to its validity. *Calvey,* 2000 OK 17 at ¶24, 997 P.2d 164. The statute must be "clearly, palpably and plainly inconsistent with the constitution." *Reherman v. Oklahoma Water Resources Bd.,* 1984 OK 12, ¶11, 679 P.2d 1296.

### ANALYSIS

I. **The Challenged Transfers From Revolving Funds, Transfer Authorizations and Expenditure Authorizations Did Not Violate Okla. Const. Art. 5, §§ 55 and 56.**

¶7 Reynolds' principle argument is that three types of sections in the challenged general appropriation bills are substantive laws and do not constitute appropriations. He identifies the alleged offending sections in his issues to be raised on appeal and asserts they violate Okla. Const. art. 5, §§ 55 and 56. These sections provide:

No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and **every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied,** and it shall not be sufficient for such law to refer to any other law to fix such sum.

---

and/or State officials, etc. for legal malpractice in their advice that the Uniform Unclaimed Property Act Trust was lawful and constitutional in its use of private trust funds for the State of Oklahoma profits, Defendants/Appellees; Case No. CJ-2015-3445, District Court of Oklahoma County, Oklahoma.

7. In *Wiseman v. Boren,* 1976 OK 2, supp. opinion ¶2, 545 P.2d 753, we determined, "[w]hether all or any part of the surplus funds should be appropriated is within the discretion of the Legislature and not this Court, as the Constitution fixes upon the Legislature the responsibility of making appropriations." (Citations omitted).

Okla. Const. art. 5, §§ 55 (emphasis added).

**The general appropriation bill shall embrace nothing but appropriations** for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. **All other appropriations shall be made by separate bills, each embracing but one subject.**

Okla. Const. art. 5, § 56 (emphasis added).

### A. Transfers from a Fund to the Special Cash Fund: Amended Petition Causes of Action 1, 6, and 12.

■ ¶ 8 The first category of sections Reynolds' challenges concern "TRANSFER" sections of the general appropriation bills that transfer money from one fund to the Special Cash Fund of the State Treasury. These are found in causes of action 1 (2014 Okla. Sess. Laws c. 420, §§ 145–158 (SB 2127)), 6 (2013 Okla. Sess. Laws c. 313, §§ 132–137 (HB 2301)), and 12 (2012 Okla. Sess. Laws c. 311, §§ 61, 68, 75, 148, 149, 152, and 157 (SB 1975))[8]. For example:

SECTION 145. TRANSFER The Director of the Office of Management and Enterprise Services shall transfer the sum of Two Million Dollars ($2,000,000.00) from the Oklahoma Center for the Advancement of Science and Technology Research Report Revolving Fund (200 Fund) to the Special Cash Fund of the State Treasury.

2014 Okla. Sess. Laws c. 420, § 145 (SB 2127).

¶ 9 Each of these sections transfer money from a fund to the Special Cash Fund[9] of the State Treasury. Reynolds argues these sec-

tions cannot be appropriations because they do not state the object or purpose for their use as required by Okla. Const. art. 5, § 55 and therefore they are substantive law. He asserts Okla. Const. art. 5, § 56 provides that a general appropriation bill may only contain appropriations not substantive law and therefore these bills are unconstitutional.

¶ 10 Appellees assert the Special Cash Fund is only a pass-through account and each general appropriation bill contains other sections which provide for appropriations from the Special Cash Fund to other specific funds for various purposes. Appellees provide examples of such sections: §§ 25, 28, 34, 48, 65, 79, 83, 92, 96, 104, 133–36, 142–43, 145–48 of SB 2127; 2014 Okla. Sess. Laws. c. 420. An example of one of these sections is as follows:

SECTION 34. There is hereby appropriated to the Physician Manpower Training Commission from any monies not otherwise appropriated from the Special Cash Fund of the State Treasury the sum of Four Hundred Thousand Dollars ($400,000.00) or so much thereof as may be necessary to perform the duties imposed upon the Physician Manpower Training Commission by law.

2014 Okla. Sess. Laws c. 420, § 34 (SB 2127).

According to Appellees' motion to dismiss, these sections appropriate approximately $300,000,000 from the Special Cash Fund to various purposes. Whereas, they note, §§ 149–62, 164–71 transfer approximately $281,500,000 from various funds to the Special Cash Fund. Appellees assert when you harmonize the sections transferring money to the Special Cash Fund with the sections appropriating money from the Special Cash Fund to other funds with stated purposes it accomplishes an appropriation and does not constitute substantive law. Appellees quote from our opinion in *Rogers v. Quiktrip Corp.*, wherein we held "different provisions of a statute must be construed together to effect

---

**8.** Cause of action 12 in Reynold's amended petition states that the Oklahoma Constitution invalidates "SEVEN (7) 'TRANSFER' SECTIONS IN THE AMOUNT OF ... TO A 'SPECIAL CASH FUND.'" He then lists 8 sections which include section 147. However, section 147 does not

indicate any money is being transferred into the Special Cash Fund and may have been included in error.

**9.** 68 O.S. 2011, § 253 (Special Cash Fund).

a harmonious whole and give intelligent effect to each." 2010 OK 3, ¶ 11, 230 P.3d 853.

¶ 11 In his amended petition, Reynolds cites *State ex rel. Parker v. Youngquist*, 69 S.D. 423, 11 N.W.2d 84 (1943). The *Parker* case has no precedential value in Oklahoma. It is merely persuasive at best. Further, its facts differ from the present case because in *Parker* there was no indication the law in question contained other provisions appropriating money for specific purposes. Reynolds acknowledges other sections of the three general appropriation bills make appropriations from the Special Cash Fund to other funds but he asserts that does not make the transfer sections appropriations. Reynolds also asserts that each section of the general appropriation bill must stand or fall on its own. We disagree.

¶ 12 As Appellees have noted, the Special Cash Fund is a pass-through account. In drafting these three general appropriation bills it is clear the Legislature's intent was to conveniently make transfers to the Special Cash Fund and then appropriate money in the Special Cash Fund to other funds. In effect, it is one continuous transaction. This was in lieu of having multiple transactions from one fund to many other individual funds. We hold that the effect of the combined transfer sections with the appropriation sections created an appropriation when, as here, they were all accomplished in a single bill. This interpretation harmonizes the provisions of each general appropriation bill. We therefore hold the transfer sections of the three general appropriation bills do not violate Okla. Const. art. 5, § 55 by failing to state a purpose within those sections. Likewise, Okla. Const. art. 5, § 56 is not violated because the contested sections constitute appropriations.

¶ 13 Within this same portion of the amended petition Reynolds quotes Okla. Const. art. 10, § 19, and cites to an opinion of this Court wherein he alleges we held "a tax revenue being devoted (transferred) to another purpose by a legislative statute ... [is] void." [10] He makes no effort to show how Okla. Const. art. 10, § 19 applies to the facts of this case. Nor does he provide facts or even an assertion that the general appropriation bills contain funds which receive a levied tax for a specific purpose. The quotation of small portions of statutory provisions and Blacks' Law Dictionary definitions with unsupported conclusions appears to be a common theme in many parts of his amended petition. In *Fent v. Contingency Review Bd.*, we held the absence of advocacy alters the nature of the appellate process by imposing upon the court the burden of researching and testing unsupported legal propositions. 2007 OK 27, ¶ 23, 163 P.3d 512. The Appellate courts will not be forced to become an active advocate for the party whose failure to brief or argue has produced a total intellectual vacuum. *Fent*, 2007 OK 27 at ¶ 23, 163 P.3d 512.

**B. Transfer Authorizations and Expenditure Authorizations: Amended Petition Causes of Action 2, 7, and 13 & 3, 8, and 14, respectively.**

¶ 14 Reynolds also challenges sections of the three general appropriation bills that provide authorization to transfer money from one fund to another and those that provide authorization to expend money. The sections transferring money from one fund to another are found in causes of action 2 (2014

10. Reynolds argument regarding Okla. Const. art. 10, § 19 in his amended petition (pp. 5–6), consists of the following statement:

On June 30, 1942 in the case of a tax revenue being devoted (transferred) to another purpose by a legislative statute this court held the transfer void in *State v. Oklahoma Tax Commission*, 1942 OK 266, 191 Okla. 155, 127 P.2d 1052, Court Syllabus 4 that:

"The amendment to section 23, art. 10, of the State Constitution, adopted March 11, 1941, does not abrogate or affect the requirement of section 19, art. 10, of the State Constitution that 'no tax levied and collected for one purpose shall ever be devoted to another purpose.' " (Emphasis supplied)

The provision of Okla. Const. Art. 10, Sec. 19, in part, states

§ 19. Specification of purpose of tax–Devotion to another purpose

"Every act enacted by the Legislature, ... levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose." (Emphasis supplied)

Okla. Sess. Laws c. 420, §§ 118, 119, 120, 121, 125, and 126 (SB 2127)), 7 (2013 Okla. Sess. Laws c. 313, §§ 113, 115, 116, 117, 118, 122, and 123 (HB 2301)), and 13 (2012 Okla. Sess. Laws c. 311, §§ 132, 134, 135, 136, and 139 (SB 1975)). The sections providing expenditure authorizations are found in causes of action 3 (2014 Okla. Sess. Laws c. 420, §§ 3, 25, 26, 27, 59, 72, 117, 123, and 130 (SB 2127)), 8 (2013 Okla. Sess. Laws c. 313, §§ 3, 26, 27, 58, 65, and 120 (HB 2301)), and 14 (2012 Okla. Sess. Laws c. 311, §§ 3, 33, 34, 46, 74, 82, 128, and 140 (SB 1975)). Examples of these authorizations are as follows:

*Transfer Authorization.*

SECTION 118. For the fiscal year ending June 30, 2015, the District Attorneys Council is authorized to transfer an amount not to exceed Nine Hundred Seventy-five Thousand Dollars ($975,000.00), on an as-needed basis, from the Crime Victims Compensation Revolving Fund created by Section 142.17 of Title 21 of the Oklahoma Statutes to the Sexual Assault Examination Fund, created by Section 142.20 of Title 21 of the Oklahoma Statutes.

2014 Okla. Sess. Laws c. 420, § 118 (SB 2127).

*Expenditure Authorization.*

SECTION 3. The State Board of Education is hereby authorized to expend during the fiscal year ending June 30, 2015, from the Common Education Technology Revolving Fund of the State Treasury, the sum of Forty-seven Million Three Hundred Seventy-two Thousand Two Hundred Ninety-nine Dollars ($47,372,299.00) or so much thereof as may be necessary for the financial support of public schools.

2014 Okla. Sess. Laws c. 420, § 3 (SB 2127).

Reynolds contends none of these sections contain the word "appropriate" and therefore these sections are substantive law and their placement in a general appropriation bill violates Okla. Const. art. 5, §§ 55 and 56. His argument is based on Okla. Const. art. 5, § 56 which requires a general appropriation bill to contain nothing but appropriations and additionally, Okla. Const. art. 5, § 55 which provides no money shall ever be paid out of the treasury except in pursuance of an appropriation by law.

¶ 15 The Appellees assert this Court has already determined no special words are necessary for a provision to operate as an appropriation. *Fent v. State ex rel. Office of State Finance,* 2008 OK 2, 184 P.3d 467. In *Fent,* we held the subject appropriation bill was drafted using terms "transferring" and "allocating" but unmistakably appropriated nearly $135,000,000. *Fent,* 2008 OK 2 at ¶ 17, 184 P.3d 467. The Appellees also quote a definition of an appropriation made by this Court in *Smith ex rel. State v. State Bd. Of Equalization,* 1981 OK 57, ¶ 5, 630 P.2d 1264. In *Smith,* we determined an "[a]ppropriation, as contrasted with accruing, is the designation or authorization of the expenditure of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand." *Smith,* 1981 OK 57 at ¶ 5, 630 P.2d 1264. The challenged sections appear to fall within our definition of appropriation. They all authorize the expenditure of public monies in a specific amount for a specific purpose. This is done by either moving money from one fund to a receiving fund wherein that money is authorized to be used for the purposes allowed by law for the receiving fund or by giving express authorization for an entity to expend money within a fund for the purposes allowed by law. The Oklahoma Constitution provides the amount of the appropriation must be specific, which it is in all these sections; "it shall not be sufficient for such law to refer to any other law to fix such sum." Okla. Const. art. 5, § 55. This section of the Oklahoma Constitution, however, only requires the appropriation bill to specify the "object" to which it is applied. In *Fent* we held that the special appropriation bill there was consistent with the provisions of Okla. Const. art. 5, § 55, even though reference to other statutes is necessary to determine "the objects or purposes of some of the appropriations." *Fent,* 2008 OK 2 at ¶ 18, 184 P.3d 467. The objects or purposes to which the funds in the present case are to be applied are ascertainable either within the appropriation bill itself or other statutes. We therefore do not find the inclusion of these transfer and expendi-

ture sections in the general appropriation bills violate Okla. Const. art. 5, §§ 55 or 56. They all constitute appropriations under our definition in *Smith.*

## II. Use Of Effective Dates Other Than July 1, The Commencement Of The Fiscal Year, Does Not Violate Okla. Const. Art. 10, § 23.

¶ 16 Reynolds' next issue raised on appeal concern his causes of action 4, 9 and 15 of his amended petition. These causes of action challenge the following sections of the three general appropriation bills: cause of action 4 (2014 Okla. Sess. Laws c. 420, §§ 171 and 173 (SB 2127)), 9 (2013 Okla. Sess. Laws c. 313, §§ 137 and 144 (HB 2301)), and 15 (2012 Okla. Sess. Laws c. 311, § 157 and 159 (SB 1975)). Each of these general appropriation bills contain two effective date sections.[11] All but one section of each bill takes effect on July 1, the beginning of the fiscal year; and one section in each bill takes effect on July 15. The sections that take effect on July 15 all transfer money from the Cash-flow Reserve Fund to the Special Cash Fund. For example, SB 1975, provides:

SECTION 157. TRANSFER The Director of State Finance shall transfer the sum of One Hundred Twenty Million Dollars ($120,000,000.00) from the Cash-flow Reserve Fund of the Office of State Finance to the Special Cash Fund of the State Treasury.

SECTION 159. Section 157 shall become effective July 15, 2012.

2012 Okla. Sess. Laws c. 311, §§ 157 and 159 (SB 1975).

Reynolds asserts the fiscal year begins on July 1 and not having these monies available and part of the "State's Balanced Budget" until July 15 violates Okla. Const. art. 10, § 23.

¶ 17 First, Reynolds asserts Okla. Const. art. 5, § 58 requires a July 1 effective date. He selectively quotes the following

from this section "[n]o act shall take effect until ninety days after the adjournment of the session at which it was passed, except . . . a general appropriation bill, . . ." The full text of this section is as follows:

No act shall take effect until ninety days after the adjournment of the session at which it was passed, except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless, in case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all members elected to each House, so directs. An emergency measure shall include only such measures as are immediately necessary for the preservation of the public peace, health, or safety, and shall not include the granting of franchises or license to a corporation or individual, to extend longer than one year, nor provision for the purchase or sale of real estate, nor the renting or encumbrance of real property for a longer term than one year. Emergency measures may be vetoed by the Governor, but such measures so vetoed may be passed by a three-fourths vote of each House, to be duly entered on the journal.

Okla. Const. art. 5, § 58.

We interpret this section to mean that no bill shall take effect **prior** to ninety days after the adjournment of the session unless it contains an emergency clause passed by a two-thirds vote of all members of the Legislature. This section specifically excludes the emergency clause requirement for enactments for carrying into effect provisions relating to the initiative and referendum and general appropriation bills. Therefore, general appropriation bills may become effective **prior** to the ninety-day period without the need for a two-thirds vote of the Legislature on an emergency clause. This section does not require any sections of a general appropriation bill to have a specific effective date.

---

11. It should be noted that over the last twenty-one years there are several other general appropriation bills that contained multiple effective dates. HB 1716 (1995 Okla. Sess. Laws c. 39); SB 160 (1997 Okla. Sess. Laws c. 60); SB 161 (1999 Okla. Sess. Laws c. 75); and HB 2260

(2000 Okla. Sess. Laws c. 121) are all general appropriation bills that contain multiple effective date sections. Most contain an effective date section of August 1. One contains an effective date section of June 1 (SB 160).

■ ¶ 18 Next Reynolds asserts if not all the money is available on July 1, the commencement of the fiscal year, then Okla. Const. art. 10, § 23(9)'s "one-twelve (12) rule" will be violated. He quotes the following portion of paragraph (9):

9. ... Revenues deposited in the State Treasury to the credit of the General Revenue Fund or of any special fund (which derives its revenue in whole or in part from state taxes or fees) shall, ... be allocated monthly to each department, institution, board, commission or special appropriation on a percentage basis, in that ratio that the total appropriation for such department, institution, board, commission or special appropriation from each fund for that fiscal year bears to the total of all appropriations from each fund for that fiscal year, and no warrant shall be issued in excess of said allocation.

Okla. Const. art. 10, § 23(9).

Reynolds bases this so-called "one-twelve (12) rule" on the section's reference to monthly allocations.

¶ 19 Appellees argue the cited provisions of the Oklahoma Constitution do not require all money for the next fiscal year to be on hand the first day of a fiscal year (July 1). In contrast, the monthly allocation provision in Okla. Const. art. 10, § 23(9), they assert, exists because all of the money for an appropriation does not need to be and for practical purposes cannot be available on July 1, the first day of the fiscal year. The balanced budget amendment found in Okla. Const. art. 10, § 23 creates a process by which the Board of Equalization certifies a forecast of expected revenues for the next fiscal year. The amounts certified restrict what is available for the Legislature to appropriate. Appropriations made in excess of the certification shall be null and void. Okla. Const. art.

10, § 23(2). Appellees assert actual collected revenues can, however, be below the forecast and this will cause a reduction in spending. The monthly allocation provision allows each month to reflect any revenue shortfalls occurring up to that point. These provisions do not require all revenue and other funds be available at the beginning of the fiscal year. Appellees contend Reynolds' claims to the contrary lack any merit. We agree. Based on Reynolds' allegations and constitutional authority we find no requirement for a July 1, the commencement of the fiscal year, effective date.

## III.

**The Appropriation Of Funds Not Otherwise Appropriated In A Prior Fiscal Year And The Reappropriation Of Such Funds Within Two And One-Half Years Does Not Violate Okla. Const. art. 5, § 55 or art. 10, § 23.**

¶ 20 Reynolds' last assertion in his issues to be raised on appeal states: "[p]rior or multi fiscal year appropriations in a current fiscal year Bill violation [sic] of Okla. Const. Art. 10, Sec. 23 et al." Unlike his other issues raised, he does not identify any specific causes of action in his amended petition concerning this issue. However, searching through his amended petition we find two causes of action that appear to fit the issue raised. These are causes of action 10 and 11. We will address cause of action 11 first.

■ ¶ 21 In cause of action 11, Reynolds challenges the appropriations made in §§ 138–141 of HB 2301; 2013 Okla. Sess. Laws c. 313. These appropriations which were all made in 2013 come from "monies not otherwise appropriated from the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 2012." [12] Reyn-

---

**12.** The four challenged sections of HB 2301 are as follows:

SECTION 138. There is hereby appropriated to the State Board of Education from any monies not otherwise appropriated from the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 2012, the sum of Eight Million Four Hundred Forty-seven Thousand Six Hundred Seventy-three Dollars ($8,447,673.00) to be transferred to the Ad

Valorem Reimbursement Fund created pursuant to Section 193 of Title 62 of the Oklahoma Statutes for the purpose of reimbursing counties for school districts that claim a loss of revenue due to a tax exemption granted pursuant to the provisions of Section 6B of Article X of the Oklahoma Constitution.

SECTION 139. There is hereby appropriated to the State Board of Education from any monies not otherwise appropriated from the General

olds asserts "[t]his is a prior fiscal year and thus unconstitutional and unlawful."

¶ 22 Reynolds alleges these four sections are unlawful because they are trying to take effect on June 30, 2012, which would occur prior to the State Board of Equalization's certification.[13] He asserts Okla. Const. art. 10, § 23 provides that legislative appropriations exceeding the Board's certification are null and void. Therefore, he argues, an appropriation made prior to the certification is unconstitutional. He bases his claim on the fact these four sections do not have an effective date. He quotes the following from Okla. Const. art. 5, § 58: "[n]o act shall take effect until ninety days after the adjournment of the session at which it was passed, except ..., or a general appropriation bill,...." It is unclear exactly how he interprets this section or how it is applicable here.

¶ 23 As explained earlier in this opinion, Okla. Const. art. 5, § 58 exempts general appropriation bills from needing an emergency clause in order to take effect prior to

ninety days after the adjournment of the session. Here there was no effective date for these four sections. Since there is no need for an emergency clause to be on a general appropriation bill, sections without an effective date will become operative on their passage.[14] HB 2301 was approved by the Governor on May 20, 2013, and these four sections became effective on that date. This took place well after the State Board of Equalization's certification (December 2012). Therefore, we find no merit in this challenge.

■ ¶ 24 Next he asserts these four sections are unconstitutional because they attempt to appropriate a prior year's certification. His argument seems to be based on language in Okla. Const. art. 10, § 23 which establishes procedures to ensure there is a balanced annual budget. He also quotes Okla. Const. art. 10, § 1 which provides the fiscal year shall commence on July 1 and from Okla. Const. art. 10, § 2 which provides "[t]he Legislature shall provide by law for an

---

Revenue Fund of the State Treasury for the fiscal year ending June 30, 2012, the sum of Five Million Six Hundred Two Thousand Three Hundred Fifty Dollars ($5,602,350.00) or so much thereof as may be necessary to provide funding for the Certified Employee Health Benefit Allowance.

SECTION 140. There is hereby appropriated to the State Board of Education from any monies not otherwise appropriated from the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 2012, the sum of Two Million Eight Hundred Ninety-seven Thousand Six Hundred Fifty Dollars ($2,897,-650.00) or so much thereof as may be necessary to provide funding for the Support Personnel Health Benefit Allowance.

SECTION 141. There is hereby appropriated to the Oklahoma Department of Emergency Management from any monies not otherwise appropriated from the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 2012, the sum of One Million Two Hundred Thousand Dollars ($1,200,000.00) or so much thereof as may be necessary for maintenance, repair and upgrades to the Oklahoma Mesonet.

13. The State Board of Equalization certification is generally made in December of each year. Okla. Const. art. 10, § 23, in pertinent part provides:

1. Not more than forty-five (45) days or less than thirty-five (35) days prior to the convening of each regular session of the Legislature, the State Board of Equalization shall certify

the total amount of revenue which accrued during the last preceding fiscal year to the General Revenue Fund and to each Special Revenue Fund appropriated directly by the Legislature, and shall further certify amounts available for appropriation which shall be based on a determination, in accordance with the procedure hereinafter provided, of the revenues to be received by the state under the laws in effect at the time such determination is made, for the next ensuing fiscal year, showing separately the revenues to accrue to the credit of each such fund of the state appropriated directly by the Legislature.

The legislative session convenes on the first Monday of February. Okla. Const. art. 5, § 26.

14. See *Berryhill v. City of Sapulpa*, 1923 OK 1109, 97 Okla. 65, 222 P. 555 (syllabus by the Court): "[t]he ordinary rule is that legislative enactments become operative on their passage, unless there is some express provision of law to the contrary." Ordinarily, a bill without an emergency clause can only become effective no sooner than ninety days after the adjournment of the session pursuant to Okla. Const. art. 5, § 58. However, because a general appropriation bill is not required to have an emergency clause, this ninety-day rule is not applicable to general appropriation bills. If a general appropriation bill does not provide an effective date for a section or sections of the bill, such section or sections are effective upon the bill's passage; meaning, generally when signed by the Governor. See Okla. Const. art. 6, § 11.

annual tax sufficient, with other resources, to defray the estimate[d] ordinary expenses of the State for each fiscal year." He then concludes "[t]hus, these four SECTIONS are unconstitutional and invalid as an attempted appropriation for a prior year's certification for the fiscal year ending on June 30, 2012." How these quoted provisions of the Oklahoma Constitution support his conclusion is also unclear.

¶ 25 In contrast to Reynolds' argument, Okla. Const. art. 10, § 23(2) specifically allows for the appropriation of money not otherwise appropriated. This section states in pertinent part:

> [P]rovided, however, that the Legislature may at any regular session or special session, called for that purpose, enact laws to provide for additional revenues or a reduction in revenues, other than ad valorem taxes, or transferring the existing revenues or unappropriated cash on hand from one fund to another, **or making provisions for appropriating funds not previously appropriated directly by the Legislature.**

Okla. Const. art. 10, § 23(2) (emphasis added).

The emphasized language in the above quote was added to Okla. Const. art. 10, § 23(2) in 1985 by State Question 587. This constitu-

> *Personal Services* $166,720.00
> *Other Operating Expenses* $0.00
>
> *Total* $166,720.00

1985 Okla. Sess. Laws c. 181, § 219 (SB 62) (emphasis added).

There are examples of this occurring in every year since State Question 587's adoption

tional amendment was drafted by the Legislature in HJR 1005 (1985 Okla. Sess. Laws p. 1672) and was adopted at the election held on April 30, 1985. We have previously held the Legislature is presumed to act within constitutional limitations and hence a legislative construction of the Oklahoma Constitution is highly persuasive especially in instances where the construction is afforded by the framing Legislature who must have been conversant with its intent. *State ex rel. Hawkins v. Oklahoma Tax Commission*, 1969 OK 118, ¶ 21, 462 P.2d 536; *State ex rel. Kerr v. Grand River Dam. Auth.*, 1945 OK 9, ¶ 20, 195 Okla. 8, 154 P.2d 946. In 1985, the very year HRJ 1005 was enacted and approved by the people, the Legislature appropriated money that was not otherwise appropriated in a prior fiscal year. One example is as follows:

> SECTION 219. There is hereby appropriated to the Department of Labor **from any monies not otherwise appropriated** from the Special Occupational Health and Safety Fund of the State Treasury **for the fiscal year ending June 30, 1984,** the following amount or so much thereof as may be necessary to perform the duties imposed upon the Department of Labor by law:

through the year 2014; the year the latest challenged bill was enacted.[15] It is clear the framing Legislature as well as every Legislature since its passage has interpreted the

---

15. The following is a sampling of instances occurring from 1985 through 2014 where the Legislature has appropriated money not otherwise appropriated in a prior fiscal year: 1985 Okla. Sess. Laws c. 181, § 219 (SB 62), 1986 Okla. Sess. Laws c. 247, § 3 (HB 1625), 1987 Okla. Sess. Laws c. 203, § 3 (HB 1099), 1988 Okla. Sess. Laws c. 247, § 4 (HB 1552), 1989 Okla. Sess. Laws c. 369, § 2 (HB 1637), 1990 Okla. Sess. Laws c. 187, § 1 (HB 2320), 1991 Okla. Sess. Laws c. 328, § 5 (HB 1248), 1992 Okla. Sess. Laws c. 327, § 17 (HB 1977), 1993 Okla. Sess. Laws c. 117, § 4 (SB 383), 1994 Okla. Sess. Laws c. 187, § 4 (SB 896), 1995 Okla. Sess. Laws c. 39, § 97 (HB 1716), 1996 Okla. Sess. Laws c. 9, § 73 (SB 837), 1997 Okla. Sess. Laws c. 60, § 87 (SB 160), 1998 Okla. Sess. Laws c. 105, § 98 (HB 3050), 1999 Okla. Sess. Laws c. 75, § 15 (SB 161), 2000 Okla. Sess. Laws c. 121, § 18 (HB 2260), 2001 Okla. Sess. Laws c. 6, § 26 (HB 1564), 2002 Okla. Sess. Laws c. 240, § 2 (HB 2439), 2003 Okla. Sess. Laws c. 267, § 3 (HB 1233), 2004 Okla. Sess. Laws c. 12, § 79 (HB 2007), 2005 Okla. Sess. Laws c. 315, § 6 (SB 83), 2006 Okla. Sess. Laws c. 82, § 104 (SB 80XX), 2007 Okla. Sess. Laws c. 317, § 52 (SB 334), 2008 Okla. Sess. Laws c. 92, § 49 (HB 2276), 2009 Okla. Sess. Laws c. 421, § 43 (SB 216), 2010 Okla. Sess. Laws c. 427, § 74 (SB 1561), 2011 Okla. Sess. Laws c. 303, § 51 (HB 2170), 2012 Okla. Sess. Laws c. 311, § 64 (SB 1975), 2013 Okla. Sess. Laws c. 313, § 57 (HB 2301), and 2014 Okla. Sess. Laws c. 420, § 78 (SB 2127).

language "or making provisions for appropriating funds not previously appropriated directly by the Legislature" to include appropriations of money that were not otherwise appropriated in a prior fiscal year. The provisions of the Oklahoma Constitution quoted by Reynolds do not prohibit these legislative appropriations. We therefore do not find these types of challenged appropriations to be clearly, palpably and plainly inconsistent with the Oklahoma Constitution. *See Reherman v. Oklahoma Water Resources Bd.*, 1984 OK 12, ¶ 11, 679 P.2d 1296.

 ¶ 26 Reynolds also asserts in cause of action 10 of his amended petition that the Legislature unconstitutionally made a multi-year appropriation in a current fiscal year. He claims that § 142 of HB 2301 (2013) attempts to make an unconstitutional "three (3) year retroactive appropriation." Section 142 provides:

SECTION 142. REAPPROPRIATION AND REDESIGNATION

The amount of Four Hundred Twenty-nine Thousand One Hundred Fifty-two Dollars ($429,152.00) of the original appropriation of One Million Two Hundred Thousand Dollars ($1,200,000.00), appropriated to the Oklahoma House of Representatives by Section 148, Chapter 303, O.S.L. 2011, from any monies not otherwise appropriated from the General Revenue Fund of the State Treasury, for the fiscal year ending June 30, 2010, for the purchase of Oklahoma Statutes and Session Laws pursuant to the provisions of Sections 13 and 14 of Title 75 of the Oklahoma Statutes, is hereby reappropriated and redesignated for the purchase of Oklahoma Statute Supplements and Session Laws pursuant to the provisions of Sections 13 and 14 of Title 75 of the Oklahoma Statutes. If, on the date this act is approved, any of the amount originally appropriated, as adjusted by expenditures, encumbrances and transfers, results in an unencumbered balance less than the reappropriated and redesignated amount, that reappropriated and redesignated amount is reduced to the unencumbered amount.

2013 Okla. Sess. Laws c. 313, § 142 (HB 2301).

Reynolds mistakenly believes this section violates the two and one-half year payment restriction found in Okla. Const. art. 5, § 55. This section provides:

No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, **nor unless such payments be made within two and one-half years after the passage of such appropriation act,** and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.

Okla. Const. art. 5, § 55 (emphasis added).

Part of this section prohibits money being paid from the State Treasury more than two and one-half years after the passage of the act that appropriates the money. The original appropriation here occurred on July 1, 2011, which is the effective date of 2011 Okla. Sess. Laws c. 303, § 148 (HB 2170). This section appropriated $1,200,000 as follows:

SECTION 148. There is hereby appropriated to the Oklahoma House of Representatives from any **monies not otherwise appropriated** from the General Revenue Fund of the State Treasury **for the fiscal year ending June 30, 2010,** the sum of One Million Two Hundred Thousand Dollars ($1,200,000.00) or so much thereof as may be necessary for the purchase of Oklahoma Statutes and Session Laws pursuant to the provisions of Sections 13 and 14 of Title 75 of the Oklahoma Statutes.

2011 Okla. Sess. Laws c. 303, § 148 (HB 2170) (emphasis added).

Like the examples in our previous discussion, this section appropriates money not otherwise appropriated in a prior fiscal year. The reappropriation of over $400,000 of the original $1,200,000 appropriated in § 148, occurred in 2013 Okla. Sess. Laws c. 313, § 142 (HB 2301). HB 2301 (2013) was silent as to an effective date for this reappropriation section (§ 142). As explained earlier in this opinion, it would therefore become effective

812

upon the signature of the Governor or as otherwise provided for in the Oklahoma Constitution if the Governor did not sign the bill. The Governor, however, signed HB 2301 on May 20, 2013, and accordingly § 142 took effect on that date; not November 1, 2013, which, without any authority or rationale, Reynolds asserts was its effective date. Therefore, § 142 provided a reappropriation that was well within the two and one-half year window provided by Okla. Const. art. 5, § 55 (July 1, 2011—May 20, 2013).

¶ 27 All we have here is a constitutional appropriation of funds that were reappropriated prior to their lapsing. We therefore find no merit in Reynolds' assertion that this reappropriation violated the Oklahoma Constitution.

### CONCLUSION

¶ 28 Having found no merit as to any of Reynolds' assertions of unconstitutionality we must therefore affirm the district court's granting of Appellees' motion to dismiss.

**AFFIRMED.**

ALL JUSTICES CONCUR.